**WESTERN RESERVE MUTUAL INSURANCE
COMPANY, Appellee and Cross–Appellant,**

v.

**CAMPBELL, Admr., et al., Appellants and Cross–Appellees.**

[Cite as *W. Res. Mut. Ins. Co. v. Campbell* (1996), 111 Ohio App.3d 537.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 95CA006222.

Decided June 5, 1996.

*John G. Farnan,* for appellee and cross-appellant.

*Michael J. Godles* and *Michael Duff,* for appellants and cross-appellees.

REECE, Judge.

Gregory Smith, Michelle DiLuciano and Beverly Campbell appeal from the trial court's grant of summary judgment in favor of the Western Reserve Mutual Insurance Company. We affirm the trial court's judgment.

## I

On June 21, 1992, Ted Martinez attended a party given by his friend Gary Smith. Martinez brought a .32 caliber derringer to the party, which he loaded before entering the house. Martinez arrived at approximately 8:30 or 9:00 p.m., and estimates that between that time and midnight he consumed enough beer to be "feeling good," but not so much that he was "able to get a good buzz." Sometime after midnight the party ended when police, called to Smith's house for the second time that evening, told guests to leave. Martinez stayed to help Smith clean.

Martinez and Smith's brother Todd began picking up cans on the back patio. Martinez claims that he removed the derringer from his pocket and placed it on a nearby table. He further claims that Todd began "messing with it while I was picking cans up." According to Martinez, after Todd set the gun down Martinez picked it up, pointed it at Todd and pulled the trigger in a play-like manner. Martinez was approximately two feet from Todd when he shot him in the head. Todd Smith died a few days later as a result of the gunshot wound to his head.

Martinez pleaded guilty to involuntary manslaughter with a gun specification, using a weapon while intoxicated, and carrying a concealed weapon. Beverly Campbell, individually and as the administrator of Todd Smith's estate, Greg Smith and Michelle DiLuciano filed a wrongful death action against Martinez. That lawsuit was submitted to the Western Reserve Mutual Insurance Company, the homeowner's insurer for Dolores Martinez, Martinez's grandmother. Western Reserve then filed the present declaratory judgment action, seeking a declaration of the rights and duties of the parties under the insurance policy issued to Dolores Martinez.

The trial court granted Western Reserve's motion for summary judgment, finding that although Martinez was a resident of his grandmother's household and therefore covered by her homeowner's insurance policy, the intentional-act exclusion of Delores Martinez's policy applied to Todd Smith's death as a matter of law. Thus, the trial court determined that Western Reserve had no duty to defend or indemnify Ted or Dolores Martinez with respect to the wrongful death lawsuit. This appeal followed.

## II

Smith, DiLuciano and Campbell (collectively, "Smith") present one assignment of error: The trial court erred in granting Western Reserve's motion for summary judgment because genuine issues of material fact exist. Western Reserve cross-assigns that the trial court erred in finding Martinez was a resident of his grandmother's household.

A

The Western Reserve homeowner's insurance policy issued to Dolores Martinez contains the following exclusion:

**"Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

"a.   which is expected or intended by the **insured**[.]"

Essentially, Smith argues that because Martinez claims that he believed the safety was on when he pointed the gun at Todd and pulled the trigger, Todd's injury and death were unexpected and unintended and therefore the above exclusion does not apply. This logic is simply implausible. Martinez admitted the following during deposition:

"A.   Yeah, but the thing about a derringer, the hammer will move. You know, if you got the safe on a regular gun, the hammer's not gonna move, but this hammer moved. Now, only way you know the safety was on, you know, just stop that far from the trigger off, so the gun was really, you know, messed up. But when I pointed it at him, the gun went off and stuff.

" *  *  *

"A.   Very unsafe gun.

" *  *  *

"Q.   It is true though, isn't it, that you knew that with a loaded gun that if it's pointed at someone and it discharged that that person—strike that. You know that if a gun discharged and it was aimed at someone point blank it could hurt them?

"A.   Yeah.

"Q.   You knew that if a gun was pointed at someone's forehead and it discharged it could kill that person conceivably, correct?

"A.   Any gun could, yeah.

"Q.   Is it fair to say that you knew as just a matter of common sense that guns are dangerous and capable of causing serious harm?

"A.   Yeah."

The trial court found that there were no disputed material facts and that "[w]hen Martinez raised a loaded, operable gun and pointed it in Smith's direction and then pulled the trigger, there is no other conclusion but that the injury was expected. As coverage under the policy is excluded for injuries that are expected or intended, there is no insurance coverage under the Western Reserve policy

# WHT–520151 for the damages resulting from the shooting of Todd Smith." We agree.

In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. Summary judgment is proper if (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; Civ.R. 56(C).

In order to avoid coverage on the basis of an intentional-act exclusion, the insurer must demonstrate that the injury itself was intentional or expected. *Physicians Ins. Co. v. Swanson* (1991), 58 Ohio St.3d 189, 193, 569 N.E.2d 906, 910–911. Smith argues that because Martinez *claims* that he did not expect or intend the injury, and because *Swanson* specifically holds that an intentional act resulting in an unintended or unexpected injury is insufficient to avoid insurance coverage, Todd's injury was therefore unintentional and coverage should be provided. Because it is always in the insured's interest to establish coverage and avoid policy exclusions, Martinez's self-serving statements are of negligible value in demonstrating intent or expectation.

This court has previously decided the issue presently before us. See *Nationwide Mut. Fire Ins. Co. v. Carreras* (Nov. 15, 1995), Lorain App. No. 95CA006031, unreported, 1995 WL 678556. In *Carreras,* Moises Carreras, a juvenile, shot and killed Joseph McKern during an altercation. Carreras admitted the crime of involuntary manslaughter and was adjudicated delinquent. The offense underlying the involuntary manslaughter charge was felonious assault, a crime requiring a "knowing" state of culpability. R.C. 2903.11(A)(1).

McKern's mother brought a wrongful death claim against Carreras and his parents. The Carrerases were insured under a homeowner's policy issued by Nationwide, which contained an intentional- or expected-acts exclusion similar to the policy exclusion in the case *sub judice.* Nationwide filed a declaratory judgment action, arguing that it had no duty to defend or indemnify the Carrerases. Carreras argued that he did not intend to shoot or kill McKern, but that the gun accidentally discharged. This court affirmed the trial court's grant of summary judgment in Nationwide's favor, stating:

"Appellant seems to be suggesting that Moises [Carreras], although he concededly was aware that his conduct would probably cause injury, did not intend to

kill Joseph [McKern], and for that reason should be insured. The fact that Moises did or did not specifically intend to kill Joseph does not contradict his admitted knowledge that his actions were likely to result in physical harm to Joseph. Moises does not contest that he intentionally pointed the rifle at Joseph. * * * According to the statutory definition of 'knowingly,' *supra*, Moises's specific purpose was irrelevant.

"This court recently considered a similar crime, aggravated assault, and determined that one who knowingly commits such a crime necessarily does so with the expectation that harm will result * * *."

Martinez, like Carreras, pleaded guilty to involuntary manslaughter, for which the culpable mental state is that of the underlying offense. *Stanley v. Turner* (C.A.6, 1993), 6 F.3d 399, 402. The culpable mental state for carrying a concealed weapon is "knowingly." R.C. 2923.12(A). A person acts "knowingly," "regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Although the underlying offenses in the present case and *Carreras* are different, both require a "knowing" state of culpability. Thus, the holding in *Carreras* is dispositive.

Martinez "need not have intended to kill; he need only to have acted knowing (or expecting) that his act would probably cause serious physical harm." *Carreras, supra.* In addition to admitting that he knew the safety on his gun did not work properly, Martinez admitted in his deposition that, as a matter of common sense, aiming a loaded gun at someone could probably cause serious injury or death. We agree with the Tenth District that "[t]he insurer does not need to prove the crime of murder in order for the intentional acts exclusion to apply." *Horvath v. Nationwide Mut. Fire Ins. Co.* (1996), 108 Ohio App.3d 732, 671 N.E.2d 638. What the insurer does need to prove is that the injury was intended or *substantially certain to occur. Id.*

Ignoring Martinez's criminal conviction, expectation or intent may be inferred in the case at bar. Martinez knew as a matter of common sense that guns are dangerous, and he knew that his gun was loaded and "unsafe" due to the "messed up" safety. Nevertheless, he pointed it at Todd's head and pulled the trigger within point-blank range. This unquestionably reckless conduct warrants exclusion from policy coverage. See *W. Res. Mut. Cas. Co. v. Macaluso* (1993), 91 Ohio App.3d 93, 631 N.E.2d 1079; *Allstate Ins. Co. v. Hevitan* (Jan. 24, 1996), Medina App. No. 2443–M, unreported, 1996 WL 27927. Construing the evidence in Martinez's favor, reasonable minds could only conclude that Martinez, at the very least, acted with heedless indifference to the consequences of his actions and disregarded the known risk posed by a loaded gun. Todd's injury and death

could reasonably be expected to result from such reckless actions. *Hevitan, supra,* citing *Steinke v. Allstate Ins. Co.* (1993), 86 Ohio App.3d 798, 621 N.E.2d 1275.

The trial court, viewing the undisputed evidence in a light most favorable to Martinez, correctly decided that reasonable minds could only conclude that Todd's injury was substantially certain to occur and the intentional-acts policy exclusion applies.

Smith's assignment of error is overruled.

## B

■ In its cross-assignment of error, Western Reserve contends that the trial court erred in determining that Martinez was a resident of his grandmother's household. Even if Todd's death were found to be an unintentional injury to which the policy exclusion did not apply, Western Reserve argues that Martinez would not be covered by his grandmother's insurance policy because he was not a resident of her household. We agree. Although it appears unnecessary for us to reach this issue based upon our above discussion, we do so, reversing the trial court's finding that Martinez was a resident of his grandmother's household.

■ "An appellate court should not substitute its judgment for that of the trial court where some competent and credible evidence supports the trial court's factual findings." *Wisintainer v. Elcen Power Strut Co.* (1993), 67 Ohio St.3d 352, 355, 617 N.E.2d 1136, 1138. However, in the present case Martinez's own deposition testimony directly contradicts the trial court's finding. Martinez testified as follows:

"Q. Is it fair to say that you primarily just went to your grandmother's house to change clothes basically?

"A. Yeah. * * *

"Q. Did you usually eat dinner at your grandmother's house?

"A. No. * * *

" * * *

"Q. Is it fair to say—strike that. In the months in the—strike that. In the month or two before the accident, is it fair to say you spent more days and nights away from your grandmother's house then [*sic*] you did in it?

"A. Yeah.

"Q. Is it also fair to say the only reason you would put your address on your employment application or driver's license or things of that sort at your grand-

mother's house was because you knew that you could always get your mail there, right?

"A. Basically. Because, you know, my father he lived in Texas, and you know, that was his only home, he would know where I am at as long as I gave that address, get in touch with my family.

" * * *

"Q. Did you pay your grandmother any rent?

"A. No."

Although Martinez listed his grandmother's address on job applications, his driver's license and tax returns, and used his grandmother's address as his mailing address, his testimony indicates that he was not a resident of her household. Martinez admitted:

"Q. Okay. In the six months of 1992 that preceded this accident, about how many days a week do you think you lived with your grandmother on average?

"A. I am telling you honestly, I was staying with this girl Crystal, I had another girl that I was staying with. You know, I—I'm a young dude like a bachelor type. If I want to spend over—a night over a girl's house, that's what I'm gonna do. So I would stay over here, I'd stay over here, I'd go to grandma's house and change clothes. I didn't even really stay there. She. hardly even saw me."

■ Maintenance of a mailing address is, in itself, insufficient to establish residency. *State Farm Fire & Cas. Co. v. Davidson* (1993), 87 Ohio App.3d 101, 107, 621 N.E.2d 887, 891–892. Viewing the totality of Martinez's testimony in light of his admission that he rarely stayed at his grandmother's, there was no competent and credible evidence to support the trial court's finding of residency. By his own admission, Martinez was not a resident of his grandmother's house, and therefore he was not covered under her homeowner's insurance policy. We reverse the trial court's finding to the contrary.

Western Reserve's cross-assignment of error is upheld.

### III

Smith's assignment of error is overruled and the order of the trial court granting summary judgment in Western Reserve's favor is affirmed. Pursuant to App.R. 12(B), we reverse the trial court's finding as to Martinez's residency and find, as a matter of law, that Martinez was not covered by his grandmother's homeowner's insurance policy as a resident of her household.

*Judgment accordingly.*

QUILLIN, P.J., concurs.

BAIRD, J., concurs in part and dissents in part.

QUILLIN, Presiding Judge, concurring.

By pleading guilty to involuntary manslaughter, Martinez admitted that he knowingly killed Todd Smith. I agree the judgment should be affirmed.

BAIRD, Judge, dissenting in part and concurring in part.

Since Martinez testified in deposition that his handling of the gun was a play-like gesture, and that he believed the safety was operational, there is a question of fact as to whether the injury was expected or intended by him. Thus, summary judgment on that issue is inappropriate.

I concur in the balance of the majority opinion, including the judgment.