NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellant,

v.

KUBACKO et al.; Craft et al., Appellees.

[Cite as *Nationwide Mut. Fire Ins. Co. v. Kubacko* (1997), 124 Ohio App.3d 282.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 96–T–5503.

Decided Dec. 8, 1997.

*Williams & Sennett Co., L.P.A., James A. Sennett* and *Louis R. Moliterno,* for Appellant.

*Ohlin, Ohlin & Scher Co., L.P.A.,* and *Joseph D. Ohlin,* for Appellees.

---

FORD, Presiding Judge.

This is an appeal from the Trumbull County Court of Common Pleas. Appellant, Nationwide Mutual Fire Insurance Company, appeals from the granting of summary judgment by the trial court in favor of appellees, Kyle L. Craft ("Kyle"), a minor, and Suzanne Craft ("Suzanne") in a declaratory judgment action.[1]

Suzanne Craft, now known as Suzanne Kubacko, is the natural mother of Kyle; Andrew is the natural father of Kevin. At the time of the incident, Suzanne and

---

1. Defendants Andrew Kubacko ("Andrew") and Kevin Kubacko ("Kevin") are not parties to the instant appeal.

Andrew were engaged; they have since married. On March 1, 1994, Kevin[2] was baby-sitting Kyle at the residence then shared by Andrew and Kevin on Route 46 in Cortland, Ohio. According to Kevin, Kyle was playing near a wood-burning furnace when he leaned against the hot surface and was burned on his buttocks. Sometime later, Kevin placed Kyle in a bathtub in which the water was too hot. Consequently, Kyle received second- and third-degree burns over eighteen percent of his body. Kyle's injuries went untreated for approximately five hours, increasing the severity of his injuries.

Pursuant to the filing of a bill of information by the prosecutor, Kevin was charged with one count of child endangering, in violation of R.C. 2919.22(A), a felony of the fourth degree, with a specification. Kevin voluntarily entered a guilty plea to the charge of child endangering on August 30, 1995, after being advised of his rights and of the elements of child endangering.[3] In a judgment entry dated October 26, 1995, Kevin was sentenced to one year in prison, which sentence was suspended by the court in lieu of five years of probation. The trial court also ordered that Kevin make restitution in the amount of the medical expenses, and pay the costs of prosecution.

Previously, on August 27, 1993, appellant had issued a tenant's insurance policy, naming Andrew as the insured. The policy contained an exclusionary provision stating that personal liability and medical payments were not applicable to bodily injury or property damage "which [was] expected or intended by the *insured.*" (Emphasis *sic.*) Andrew's policy was subsequently amended by an endorsement containing the following liability exclusion:

"*Section II—Exclusions*

"In all policies under the Section II—Exclusions for Personal Liability and Medical Payments to Others, paragraph a. is deleted and replaced by the following:

"a. caused intentionally by or at direction of an *insured,* including willful acts the result of which the *insured* knows or ought to know will follow from the *insured's* conduct."[4] (Emphasis *sic.*)

---

2. Kevin was eighteen years old at the time of the incident.

3. "The Defendant did 1) being the parent, guardian, custodian, person having custody or control 2) of a child under eighteen years of age 3) shall create a substantial risk to the health or safety of said child 4) in Trumbull County, Ohio. *SPECIFICATION:* That the said Defendant's violation of Child Endangering did result in serious physical harm to the child involved."

4. The policy also contains a provision defining "insured" to include relatives who live in the insured's household.

On May 30, 1995, appellant filed a complaint for declaratory judgment, requesting the trial court to declare that the incident claimed by defendants Andrew, Kevin, Suzanne, and Kyle was excluded by the intentional-acts exclusion of Andrew's policy with appellant. Appellees Suzanne and Kyle filed an answer and a counterclaim on July 27, 1995, requesting that the court declare that the negligent and/or accidental acts of Kevin be covered by appellant, and requesting a declaration from the court that the policy provide personal liability coverage in the amount of $100,000, separately, to both of their claims, and that the policy provide medical payments in behalf of Kyle for $1,000. Defendant Kevin filed a separate answer on July 27, 1995.

Appellees Suzanne and Kyle filed a motion for summary judgment on January 25, 1996.[5] They filed a cross-claim against Kevin on February 2, 1996, seeking monetary damages for Kevin's alleged negligence. Appellant filed its motion for summary judgment on March 29, 1996.

In a judgment entry filed on June 7, 1996, the trial court overruled appellant's motion for summary judgment, and granted the motion of appellees Suzanne and Kyle, determining that (1) in view of the holding in *Physicians Ins. Co. of Ohio v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, "[t]here [was] no evidence before the Court that would indicate that Kevin Kubacko even knew the bath water was hot nor did he know that the child would be injured"; (2) "[c]hild endangering does not require knowledge or intent under [the] statute, [but] at best the requirement is recklessness," which the court found to be a different standard than willful or intentional; and (3) appellant failed to carry the burden of establishing that the actions were excluded by the specific and unambiguous terms of the insurance contract and the conduct was, therefore, presumed to be covered. The trial court first declared that $100,000 of personal liability coverage was available to Kyle under the policy. The court next determined that $100,000 of personal liability coverage was also available to Suzanne. Finally, the trial court stated that the policy would provide medical payments on behalf of Kyle in the amount of $4,000.

Appellant filed a timely appeal[6] and raises the following assignments of error:

---

**5.** The affidavit of Kevin was attached to this motion, in which Kevin claimed:

"4. In the home was a large wood burning furnace. Kyle L. Craft accidently backed into the furnace while it was in operation. At that time, I placed Kyle L. Craft in warm water. I did not know it then, but the water was apparently too hot for the child and he received second and third degree burns.

"5. On March 1, 1994, the purpose of my putting Kyle L. Craft in water was not to cause an injury. I did not intend to injure Kyle L. Craft by placing him in the water, nor did I expect him to be injured when I placed him in the water."

**6.** Appellant also submitted supplemental case authority to this court on April 22, 1997.

"[1.] The trial court erred to the prejudice of [appellant] by incorrectly and arbitrarily determining an amount of coverage available under appellant Nationwide's policy of insurance with appellees.

"[2.] The trial court erroneously granted summary judgment in favor of appellees because genuine issues of material fact exist concerning whether appellee Kevin Kubacko knew, or ought to have known, his conduct in placing appellee Kyle Craft in scalding water would cause injury.

"[3.] The trial court erred in its application of *Physicians Ins. Co. [of Ohio ] v. Swanson* to the instant case because different policy exclusions distinguish this case from *Swanson,* and because an issue of material fact exists regarding whether appellee Kevin Kubacko knew, or ought to have known, his conduct would cause injury.

"[4.] The court erred in its award of summary judgment in favor of appellee Kevin Kubacko because the ruling allows a convicted felon to be indemnified by insurance for an illegal act, and is thus contrary to public policy." [7]

Due to the interrelatedness of the issues in the second and third assignments, we will address the alleged errors under those assignments in consolidated fashion. Since those assignments are dispositive, we will consider them first.

The applicable standard of review for a summary judgment was stated by this court in *Motorists Mut. Ins. Co. v. Manning* (Aug. 29, 1997), Geauga App. No. 96–G–1999, unreported, at 3, 1997 WL 531235:

"As in any summary judgment exercise, the movant bears the responsibility of demonstrating to the trial court that there is an absence of a genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105 [671 N.E.2d 241, 244–245]. If the movant fails to satisfy this burden, summary judgment must be denied. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293 [662 N.E.2d 264, 273–274]. If the motion for summary judgment is sufficient to demonstrate an absence of triable issues, a corresponding duty is triggered in the non-movant to come forward with evidence demonstrating a jury question. *State ex rel. Mayes v. Holman* (1996), 76 Ohio St.3d 147, 148 [666 N.E.2d 1132, 1133–1134]. If the non-movant is successful in rebutting the movant's case, summary judgment must be denied. * * * An appellate court subjects a lower court's entry of summary judgment to a *de novo* standard of review. *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 552 [671 N.E.2d 317, 320]."

---

7. We note that the trial court actually awarded summary judgment in favor of appellees Suzanne and Kyle.

In a declaratory judgment action brought by an insurer, the burden is on the insurer to establish an exclusion. *Continental Ins. Co. v. Louis Marx & Co.* (1980), 64 Ohio St.2d 399, 401, 18 O.O.3d 539, 540, 415 N.E.2d 315, 317. "In order to avoid coverage on the basis of an intentional-act exclusion, the insurer must demonstrate that the injury itself was intentional or expected." *W. Res. Mut. Ins. Co. v. Campbell* (1996), 111 Ohio App.3d 537, 541, 676 N.E.2d 919, 922.

In *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 665 N.E.2d 1115, the Ohio Supreme Court articulated the "inferred intent" rule in a child sexual molestation case: "under the inferred intent rule, intent to injure is inferred as a matter of law from the act of sexual abuse of a child itself, as harm is deemed inherent in the sexual molestation, regardless of the offender's expression of subjective intent * * *." *Id.* at 36–37, 665 N.E.2d at 1117. The act of child sexual molestation and the harm caused thereby are "virtually inseparable." *Id.* at 37, 665 N.E.2d at 1117–1118.

Although R.C. 2919.22(A) does not expressly state a culpable mental state as an element of the crime of child endangering, the Supreme Court of Ohio has recently held that "[t]he existence of the culpable mental state of recklessness is an essential element of the crime of endangering children under R.C. 2919.22(A)." *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975, syllabus. See, also, *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144 (construing R.C. 2919.22[B][2]); *State v. O'Brien* (1987), 30 Ohio St.3d 122, 30 OBR 436, 508 N.E.2d 144, (construing R.C. 2919.22[B][3]); *State v. Duke* (Sept. 30, 1993), Portage App. No. 93–P–0010, unreported, 1993 WL 406574; *State v. Schoolcraft* (May 29, 1992), Portage App. No. 91–P2340, unreported, 1992 WL 276661.

In our opinion, the critical distinction between the policy exclusion in *Swanson* and the clause at issue here is that the exclusionary language in the case *sub judice* is more broadly worded than the exclusion in *Swanson,* since it precludes coverage for intentionally *or* willfully caused injuries. Recklessness has been held to be the functional equivalent of willfulness in the civil context. *Brockman v. Bell* (1992), 78 Ohio App.3d 508, 516, 605 N.E.2d 445, 450, citing *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705; *Jackson v. Butler Cty. Bd. of Commrs.* (1991), 76 Ohio App.3d 448, 602 N.E.2d 363; 2 Restatement of the Law 2d, Torts (1965) 587, Section 500. See, also, *Breeds v. McKinney* (1960), 171 Ohio St. 336, 14 O.O.2d 8, 170 N.E.2d 850. For the purpose of deciding whether the exclusion here has been triggered, reckless action is tantamount to willful conduct. Thus, in support of its summary judgment motion, appellant was only required to present evidential materials demonstrating that Kevin acted recklessly, not intentionally, in causing Kyle's injury.

Under Crim.R. 11(B)(1), a guilty plea is a "complete admission of the defendant's guilt." "By entering a guilty plea, the accused necessarily admits that he did the specific acts which he is accused of doing. *Flenoy v. Ohio Adult Parole Auth.* (1990), 56 Ohio St.3d 131, 133 [564 N.E.2d 1060, 1062–1063], citing *United States v. Broce* (1989), 488 U.S. 563, 570 [109 S.Ct. 757, 762–763, 102 L.Ed.2d 927, 936]." *Manning* at 9, fn. 2. "Guilty pleas are admissible as evidence. Evid.R. 803(21)." *Manning* at 7. In *Manning*, this court also stated:

"The Supreme Court of Ohio has held that the submission of a guilty plea to a criminal charge, for a crime of which *intent* is an essential element, is strong enough proof so as to eliminate all doubt as to whether an insured's conduct would be deemed 'intentional' for purposes of an 'intentional act' exclusion. *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 115 [30 OBR 424, 430, 507 N.E.2d 1118, 1124–1125]." (Emphasis added.) *Id.* at 7.

"Where the insured has [pleaded] guilty to the sexual molestation of a minor, his intent to cause harm may be inferred as a matter of law from the commission of the crime for the purposes of determining whether an intentional act exclusion applies." *Manning* at 5, fn. 1, citing *Westfield Ins. Co. v. Roberts* (1993), 88 Ohio App.3d 532, 537, 624 N.E.2d 343, 346. The inferred-intent rule has also been applied to injuries stemming from reckless conduct. See *Campbell* at 542, 676 N.E.2d at 922–923; *Allstate Ins. Co. v. Cartwright* (June 27, 1997), Montgomery App. Nos. 15472 and 15473, unreported, 1997 WL 368370. These cases invariably involved gunshot injuries.

The "inferred-intent" rule is not applicable for our determination of whether the exclusion in the case at bar has been triggered. In child endangerment, unlike child sexual abuse, the causal effect between the perpetrator's action and the harm suffered by the child is not a foregone conclusion. Reckless and/or wilful conduct involves a different degree of volitional action on the part of the actor than intentional conduct. Reckless conduct involves a substantial *risk* of harm, whereas intentional conduct essentially presupposes the occurrence of harm. Under the facts of this case, we reject the notion that a guilty plea to an offense in which recklessness is an essential element constitutes irrefutable evidence of the certainty of the occurrence of harm.

In his guilty plea to child endangering, Kevin admitted that he created a substantial risk of harm that resulted in serious injury to Kyle. Kevin's guilty plea was not sufficient, in and of itself, to establish *per se* that Kyle's injury was the result of reckless/willful conduct. However, by submitting the certified copy of the guilty plea,[8] appellant satisfied its burden of presenting at least some

---

8. Appellant attached certified copies of the following to its brief in opposition to appellees' motion for summary judgment: (1) the "Finding of Guilty Plea to Bill of Information," (2) the

evidence which demonstrated that Kevin's conduct fell outside of the scope of the policy's coverage.

Putting aside Kevin's guilty plea, recklessness was arguably otherwise demonstrated. It is proper for a court to examine the underlying facts of the crime. *Cartwright* at 8. It has been held that a self-serving statement in an affidavit is of negligible value in demonstrating intent or expectation in an insurance policy coverage analysis. *Campbell,* 111 Ohio App.3d at 541, 676 N.E.2d at 919. However, in light of the fact that Kyle burned himself on the stove, and assuming, *arguendo,* that Kevin did not know that the water was too hot, the fact that Kevin consciously allowed Kyle's various burn injuries to go untreated for approximately five hours is arguably sufficient, in and of itself, to suggest the occurrence of reckless conduct. " 'Reckless misconduct' involves a 'conscious choice of a course of action, either with the knowledge of serious danger to others involved in it or with the knowledge of facts that would disclose this danger to any reasonable man.' [Restatement of the Law 2d, Torts, (1965) 590, Section 500.]" *Ickes v. Tille* (1996), 110 Ohio App.3d 438, 442, 674 N.E.2d 738, 740.

In any event, it is clear that appellant presented evidence demonstrating that there was a genuine issue of material fact regarding whether Kevin's conduct was reckless for purposes of determining the applicability of the exclusion. Therefore, the trial court erred in granting summary judgment for appellees Suzanne and Kyle. Accordingly, appellant's second and third assignments of error have merit.

▮ Appellant's first assignment of error is also well founded. The court's declaration of the availability of $4,000 in medical payments for Kyle clearly exceeds the amount allowed under the express terms of the policy, $1,000. Likewise, the policy clearly provides that only $100,000 in coverage is available *per occurrence.* Kyle's injury, which resulted from the initial burn, the subsequent placing of his body in the hot water, and the delay in seeking medical attention, constituted a single occurrence.[9] Thus, the trial court incorrectly declared that the policy provided $200,000 when only a single occurrence was

---

judgment entry sentencing Kevin, and (3) the "Bill of Information." These certified documents are self-authenticating. See *State v. Peterson* (Nov. 29, 1996), Trumbull App. No. 96–T–5456, unreported, at 12, 1996 WL 761231; Evid.R. 902(1), (2), and (4). Thus, contrary to appellees' contention, appellant submitted appropriate evidential materials in support of its motion.

9. The definitions section of the policy states, in part:
"9. *'Occurrence '* means *bodily injury* or *property damage* resulting from:
"a. one accident; or
"b. continuous or repeated exposure to the same general condition." (Emphasis *sic.*)

involved. Under this policy, the court could only award $100,000 total to either Suzanne, or Kyle, or both of them together.

■■■ Turning to the fourth assignment of error, the Supreme Court of Ohio has stated that "[l]iability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial, [or] criminal conduct." *Gearing,* 76 Ohio St.3d at 38, 665 N.E.2d at 1118. The *Gearing* court further stated:

"Consistent with the public policy expressed in the Criminal Code, we agree with those courts that have concluded that a 'person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm,' *Whitt v. De Leu* (W.D.Wis.1989), 707 F.Supp. 1011, 1016. Moreover, requiring an insurer to indemnify an insured who has engaged in sexual abuse of a child 'subsidizes the episodes of child sexual abuse of which its victims complain, at the ultimate expense of other insureds to whom the added costs of indemnifying child molesters will be passed.' *Horace Mann Ins. Co. v. Fore* (M.D.Ala.1992), 785 F.Supp. 947, 956." *Id.* at 39, 665 N.E.2d at 1119.

Appellant argues that the same rationale is equally applicable here, and dictates that we not require an insurer to subsidize an injury stemming from a conviction of child endangerment. We disagree.

In our view, appellant's proposition casts too broad a net by excluding coverage for injuries that arise as the result of behavior which is undoubtedly criminal under the relevant statute, but involves a set of circumstances that do not indicate heinous, or egregious conduct. The Second District Court of Appeals in *Cartwright,* at 11, cogently analyzed a broadly worded criminal acts exclusion which illustrates appellant's strained interpretation of *Gearing:*

"We are aware that the unfettered application of criminal acts exclusions may mean that insurance companies can avoid their obligations under their policies whenever an insured violates a criminal statute. Insurance companies are now writing their criminal acts exclusions very broadly to exclude any injury resulting from a criminal act, regardless of the type of criminal act and whether the injury was reasonably expected to occur. While it is true that public policy disfavors insuring for *certain* injuries stemming from *certain* criminal acts, it surely does not prohibit coverage for all injuries resulting from any criminal act. Of course, public policy does not, for example, prohibit insurance coverage for unexpected injuries stemming from minor traffic offenses or crimes based upon only negligent acts. * * *

"These broadly worded criminal acts exclusions could, without a strong public policy justification, reach many injuries that are normally considered to be covered by insurance. It is possible that these broadly written criminal acts

exclusions will be used to gut normal insurance coverage and extend what may be excluded under insurance policies to include accidents. Either the type of criminal acts that come within the purview of these exclusions need to be restricted or the injuries stemming from criminal acts need to be limited to those which are expected to avoid this problem." (Emphasis added.)

In our view, appellant's proposed statement of law would represent an improper extension of the *Gearing* holding. We note, initially, that the standard exclusion in *Gearing* applied to intent. Furthermore, reckless conduct is not categorically excluded from the ambit of insurance coverage. Moreover, appellant's argument does not address the possibility that Kevin's conduct arguably did not rise to the crest of recklessness, but instead constituted negligence. If true, that factor would further militate against this court holding that public policy disfavors providing insurance coverage for any injury arising from any criminal act whatsoever, regardless of the underlying circumstances. In summary, appellant's fourth assignment of error is without merit.

Appellant's first, second, and third assignments of error have merit, and the fourth assignment is meritless. The judgment of the trial court in favor of appellees Suzanne and Kyle Craft is reversed, and the cause is hereby remanded for proceedings consistent with this opinion.

*Judgment accordingly.*

CHRISTLEY and WILLIAM M. O'NEILL, JJ., concur.