OPINION
{¶ 1} Appellants and intervening defendants, Keith and Lisha King ("the Kings"), appeal the September 23, 2002 judgment entry of the Lake County Court of Common Pleas, granting summary judgment in favor of plaintiff-appellee, Nationwide Mutual Insurance Company ("Nationwide"). The Kings seek damages for injuries Keith sustained while attempting to apprehend defendant, Jason Layfield ("Layfield"), as Layfield eluded arrest. The Kings seek recovery under a tenant's policy of insurance issued by Nationwide to Rachel and Joseph Gregory ("the Gregorys"), Layfield's mother and stepfather, with whom Layfield was living at the time of the incident. For the reasons set forth below, we affirm the decision of the lower court.
 {¶ 2} On June 2, 2000, Keith was working as a sergeant with the Lake County Sheriff's Department. That evening, the sheriff's department had received several complaints regarding a disturbance involving a Corky McElroy ("McElroy"). McElroy's vehicle was described as a pickup truck with one working headlight. Keith pulled over a truck matching that description on Lake Road at Cottage Court in Painesville Township. The truck was operated by Layfield, who had been drinking that evening and who was driving with a suspended license. As Keith was putting his police car into park, Layfield exited the driver's side door and walked around to the front of the truck. Keith exited his vehicle and yelled for Layfield to "stop" and "get back in the truck." Layfield fled the scene, running down Cottage Court.
 {¶ 3} Keith pursued Layfield on foot. After about 50 yards, Keith managed to tackle Layfield to the ground. As soon as he was brought to the ground, Layfield tried to get back up. He rolled over on his back and began trying to scoot himself backwards using his hands and feet. Keith was still on his stomach, trying to grab hold of Layfield's feet. While struggling in this manner, Layfield kicked Keith in the hands and shoulders, causing the injuries complained of herein. When Layfield had cleared himself from Keith, he resumed his flight. Keith caught up with Layfield again on Lakeview Drive. Using a chemical mace spray, Keith was able to subdue and handcuff Layfield.
 {¶ 4} Layfield was charged with assault on a police officer, obstruction of official business, and resisting arrest. In the general case report prepared the evening of Layfield's arrest, King reported that he sustained injuries when Layfield "began to kick at this officer with both his feet." Subsequently, Layfield pled guilty to the charge of assault.
 {¶ 5} The Kings initially filed a claim against Layfield for damages. While that case was pending, Nationwide filed the present action on October 1, 2001, against Layfield and the Gregorys for declaratory judgment. Nationwide sought a declaration that it has no obligation to provide coverage to Layfield under the tenant's policy issued to the Gregorys, and that it has no obligation to make any payment to the Kings for damages incurred in connection with the June 2, 2000 incident with Layfield. The Kings dismissed their case against Layfield and were granted leave to intervene in Nationwide's declaratory judgment action pursuant to Civ.R. 24. Nationwide moved for summary judgment, which the trial court granted on September 23, 2002. This appeal timely follows.
 {¶ 6} The Kings raise a single assignment of error: "The trial court erred in granting Plaintiff's/Appellee's Motion for Summary Judgment."
 {¶ 7} "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Hardwick Chem. Corp. (1995),73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293,662 N.E.2d 264, 273-274." Zivich v. Mentor Soccer Club, Inc.,82 Ohio St.3d 367, 369-370, 1998-Ohio-389. A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336 (citation omitted). A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brown v. SciotoCty. Commrs. (1993), 87 Ohio App.3d 704, 711.
 {¶ 8} The tenant's policy issued by Nationwide to the Gregorys provides that Nationwide "will pay damages the insured is legally obligated to pay due to an occurrence." An "occurrence" is defined as "bodily injury or property damage resulting from * * * one accident." Although "accident" is not defined in the Nationwide policy, the Ohio Supreme Court has characterized the concept of "accidental" as being opposed to the concept of "intentional." Gearing v. Nationwide Ins. Co.,76 Ohio St.3d 34, 38, 1996-Ohio-113. An "amendatory endorsement" attached to the Nationwide policy excludes personal liability coverage for bodily injury or property damage "caused intentionally by or at the direction of an Insured, including willful acts the result of which the Insured knows or ought to know will follow from the Insured's conduct." "In order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended." Physicians Ins. Co. v. Swanson (1991),58 Ohio St.3d 189, syllabus.
 {¶ 9} Relying on the policy exclusion for injuries intentionally caused by an insured, the trial court granted summary judgment in Nationwide's favor. "Given that Layfield willfully attempted to elude police by: (1) causing Sgt. King to engage in a chase in the dark; (2) fighting with Sgt. King to escape capture; and (3) again attempting to escape while dodging objects, and hurdling bushes in the dark, it is clear that Layfield chose a course of conduct that he knew or should have known would pose serious danger to Sgt. King." We agree with the trial court that reasonable minds could only conclude that Layfield knew or should have known, i.e., intended or expected, that his conduct while eluding arrest would cause Keith injury.
 {¶ 10} It is well established that, for the purposes of an intentional acts exclusion, acts which are intended to cause harm or are inferred as intended to cause harm are, by definition, not accidental.Gearing, 76 Ohio St.3d at 36-37; Swanson, 58 Ohio St.3d 189, at syllabus ("[i]n order to avoid coverage on the basis of an exclusion for expected or intentional injuries, the insurer must demonstrate that the injury itself was expected or intended"). The intent to cause harm has been inferred from certain acts that are so closely related to the resulting harm that the commission of the act is tantamount to intending the harm.Gearing, 76 Ohio St.3d at 36-37. Courts have often inferred the intent to harm where the insured has intentionally struck another person. See, e.g., United Ohio Ins. Co. v. Vanosdol (June 1, 1993), 12th Dist. Nos. CA92-08-073, CA92-08-075, 1993 Ohio App. LEXIS 2746, at *9 (noting that it "simply belies common sense for [the insured] to suggest that he intended to hit [the victim] but did not intend any bodily injury");State Auto. Mut. Ins. Co. v. Steverding (June 1, 2000), 8th Dist. No. 77196, 2000 Ohio App. LEXIS 2342, at *15-*16; Aguiar v. Tallman (Mar. 15, 1999), 7th Dist. No. 97 C.A. 116, 1999 Ohio App. LEXIS 985, at *11-*14. As the Ohio Supreme Court has observed, "[l]iability insurance does not exist to relieve wrongdoers of liability for intentional, antisocial, criminal conduct." Gearing, 76 Ohio St.3d at 38.
 {¶ 11} In the present case, the testimony of Layfield and Keith establishes that Layfield's act of kicking to escape arrest by Keith was intentional and voluntary. This is established most clearly in Keith's written report made the night of the incident. It states therein, "This officer managed to tackle the subject about 50 yards from his vehicle in the gravel road, however [Layfield] flipped over onto his back and began to kick at this officer with both of his feet. The impact from his shoes hit this officer in the hands and shoulder area's [sic] causing immediate injury to the left wrist and right thumb."[1] Nothing in the later depositions of Keith or Layfield contradict this basic account of the event. According to the deposition testimony, Keith tackled Layfield by grabbing him about the waist and the knees. After they fell to the ground, Keith was still grabbing hold of Layfield's foot. Layfield's reaction was to roll over on his back and begin to kick with both legs in order to free himself. As Layfield did so, he injured Keith as his kicks made impact with Keith's hands and shoulders. Accordingly, the intent to injure Keith on Layfield's part will be inferred.
 {¶ 12} Keith argues that, according to Layfield's own testimony, Layfield did not intend to injure Keith. This testimony does not preclude the granting of summary judgment in Nationwide's favor. "Because it is always in the interest of an insured to establish coverage and avoid policy exclusions, an insured's self-serving statements denying intent to injure are often `of negligible value in demonstrating intent or expectation.'" Aguiar, 1999 Ohio App. LEXIS 985, at *13, quoting W. Res.Mut. Ins. Co. v. Campbell (1996), 111 Ohio App.3d 537, 541. Nor does merely "characterizing an insured's conduct as `negligent' * * * create a question of fact with respect to the insured's intent as `the mere insinuation of negligence in a civil complaint cannot transform what are essentially intentional torts into something "accidental" that might be covered by insurance.'" State Farm Fire Cas. Co. v. Totarella, 11th Dist. No. 2002-G-2457, 2003-Ohio-5229, at ¶ 21, quoting State Auto.Ins. Cos. v. Manning (Aug. 29, 1997), 11th Dist. No. 96-G-2000, 1997 Ohio App. LEXIS 3582, at *20. Here, Layfield's admittedly intentional act of kicking while Keith grabbed at his feet renders moot any consideration of whether Layfield intended to cause harm or not.
 {¶ 13} The fact that Layfield pled guilty to the charge of assault further strengthens the conclusion that coverage in this case is barred by the intentional acts exclusion. This court has recognized that "[r]ecklessness has been held to be the functional equivalent of willfulness in the civil context." Nationwide Mut. Fire Ins. Co. v.Kubacko (1997), 124 Ohio App.3d 282, 288 (citations omitted). Thus, "reckless action is tantamount to willful conduct." Id. The crime of assault requires that the offender "recklessly cause serious physical harm to another." R.C. 2903.13(B). "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result." R.C.2901.22(C). By pleading guilty to assault, Layfield has necessarily admitted that he did the specific act that he was accused of doing, i.e., recklessly causing physical harm to Keith. Manning, 1997 Ohio App. LEXIS 3582, at *11, n2, citing Flenoy v. Ohio Adult Parole Auth. (1990),56 Ohio St.3d 131, 133. Thus, for the purposes of the Kings' civil claims, Layfield's conviction of assault demonstrates that he acted recklessly and that the Nationwide exclusion does apply.
 {¶ 14} For the foregoing reasons, we affirm the decision of the Lake County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee Nationwide.
Judgment affirmed.
Judith A. Christley and William M. O'Neill, JJ., concur.
[1] We also note that, before Keith had subdued Layfield with mace, Layfield had lunged at Keith in an effort to bring the officer down.