OPINION
{¶ 1} Appellant, Elizabeth Gough ("Gough"), appeals from the May 18, 2005 judgment entry of the Ashtabula County Court of Common Pleas, granting the motion for summary judgment of appellees, The Galley ("Galley"), and R-Janat, Inc. ("RJ-anat").
 {¶ 2} On June 22, 2004, in Case Number 2004 CV 601, Gough filed a complaint for personal injuries against appellees, Laura Lynn Irish ("Irish"), and Allstate Indemnity Company ("Allstate"), Gough's uninsured motorist carrier. In her complaint, Gough alleged, inter alia, that on or about June 23, 2003, she and Irish were patrons of the Galley, owned by R-Janat, and that Irish negligently, carelessly, and recklessly struck her with her motor vehicle, pinning her against a wall. Further, Gough maintained that Irish was under the influence of alcohol at the time of the incident, that the Galley and/or its employees negligently served alcohol to Irish after she was noticeably intoxicated, and that Irish's intoxication was the proximate cause of Gough's injuries.
 {¶ 3} On August 20, 2004, in Case Number 2004 CV 826, Nationwide Mutual Insurance Company ("Nationwide"), filed a complaint for a declaratory judgment against Irish, the Galley, R-Janat, Allstate, and Gough. Nationwide claimed that at the time of the incident, it insured Irish through an automobile insurance policy. Nationwide sought a declaratory judgment from the trial court that pursuant to its policy with Irish, specifically a coverage exclusion, it did not have to insure Irish for the incident that occurred on June 23, 2003, due to Irish's alleged malicious, willful, and wanton conduct.
 {¶ 4} On February 17, 2005, Nationwide filed a motion for summary judgment pursuant to Civ.R. 56, arguing that summary judgment was appropriate based upon its declaratory judgment claim that it filed on August 20, 2004.
 {¶ 5} On February 17, 2005, the Galley and R-Janat filed a motion for summary judgment, arguing that they could not be held liable under R.C. 4399.18, and thus were entitled to judgment as a matter of law.
 {¶ 6} On February 18, 2005, Irish filed a motion for summary judgment pursuant to Civ.R. 56, requesting the court to declare that Nationwide had an obligation to provide her with insurance coverage since she did not act intentionally and/or willfully.
 {¶ 7} Gough filed a combined brief in opposition to Nationwide's, the Galley's and R-Janat's motions for summary judgment on March 18, 2005.
 {¶ 8} According to the depositions and affidavits in the record on appeal, the following disputed facts gave rise to this appeal.[1] According to Irish's deposition, on the evening of June 23, 2003, she got off work at 9:00 p.m. and went to the Galley. She admitted to having four beers and two shots of vodka from approximately 9:30 p.m. until 11:30 p.m., but denied being intoxicated, and denied that alcohol had anything to do with the incident. She got upset because her boyfriend, David Reushling ("Reushling"), was ignoring her. She was also upset because Reushling was dancing with Gough. At approximately 11:30 p.m., Irish told her friend, John Nemeth ("Nemeth") that she wanted to go home. As she was trying to leave, she stated that Gough approached her, grabbed her, and pulled her hair. At that point, she went outside because she said that all she wanted to do was go home. As she was getting into her car, she dropped her keys and Nemeth helped her find them. She then indicated that Gough was standing in front of her car, spitting on it, and yelling names at her. Irish stated, "[t]hat's when I meant to put my car in reverse, and I put it in drive and I struck her." However, she indicated that she was not aware if she actually pinned Gough to the wall of the Galley. Irish also denied that she put her car into reverse, backed up, and then put her car back into drive, hitting Gough. After she struck Gough, Irish stated she "panicked * * * [and] left the parking lot and went down to the BP Station, and I turned around and I came back, and I was holding ice on her leg * * * until the ambulance got there."
 {¶ 9} Olivia Horn ("Horn"), the bartender on duty at the Galley on June 23, 2003, stated in her deposition that at the time of the incident, she was living with the owner of the Galley, Joe Niemi ("Niemi").[2] She indicated that after approximately 8:30 p.m., she was the only employee working that night, and that she was responsible for cooking, as well as bartending. She opined that there were approximately twenty patrons that evening. She did not remember an altercation inside the bar; however, she became aware that there was a fight outside. She looked outside and saw Gough and Irish verbally fighting. Before Irish got into her car, Horn indicated that "[Irish] kept saying I just want to go home, and at that point * * * Crystal, Leslie and [Gough] * * * were all kind of ganging up on [Irish] at that point." Horn then stated that, "[Irish] proceeded to get inside her vehicle, and they were giving each other the finger and making obscenities at each other, and [Irish] put the car in reverse, and then when [Gough] gave her the finger, [Irish] put it in drive." When asked how she knew that Irish put her car into reverse, Horn replied, "[s]he probably backed up about six inches[,]" and that after Gough gave her the finger, she put her car in drive and went forward "[p]retty fast." Horn then stated, "[a]t that point [Irish] smashed [Gough] against the building, put her car in reverse and took off."
 {¶ 10} Horn further indicated that prior to working at the Galley, she had received a full day of training to identify customers who were intoxicated. She was taught to look for shaking hands, stumbling, slurred speech, redness of the eyes, and obnoxious and loud behavior. She stated that several times a week, she had to stop serving customers who were intoxicated. On the night in question, she opined that neither Irish nor Gough, or any of the other customers, were intoxicated, nor did she contemplate not serving them anymore.
 {¶ 11} Horn admitted in her deposition that she contradicted what she had originally said in her written statement to the police immediately following the incident. She agreed that immediately following the incident, she had stated: "`I stepped out front to make sure the problem was over when [Irish] got into her Jeep, flipped off the victim, and proceeded to put her car in drive and rammed into the victim[.]'" In her deposition, however, she stated that she observed Irish back up first, and then go forward. When asked if her statement that she gave to police on the night of the incident would be more accurate than her deposition testimony, more than a year and a half later, she responded, "I don't know how to answer that."
 {¶ 12} According to the affidavit of Forest Starr, Jr. ("Starr"), attached to Nationwide's motion for summary judgment, he was a patron at the Galley on the night in question. He averred that around midnight, he observed Irish and Gough, as well as two other customers, begin arguing inside the restaurant, and then proceed outside. He followed them outside. Irish was trying to go home, and the other women were still fighting. Irish and another woman, Crystal Garney ("Garney"), were pulling each other's hair. He saw Irish get into her car, put it into reverse, and start to back out of the parking spot. At that time, he indicated that Gough and Irish starting flipping each other off, and then Gough spit on the front of Irish's vehicle. He then saw Irish stop her car, put it into drive, and "with an angry look on her face she hit the accelerator and rammed her car into [Gough]." He indicated that after Irish hit Gough, she immediately left in her car, but came back a minute later to assist her.
 {¶ 13} According to the affidavit of "Nemeth", attached to Irish's motion for summary judgment, he was also a patron at the Galley on the night in question. He averred that he observed Irish and two other women fighting, shouting, pushing, and pulling hair. He stated that Irish went outside, and was followed by the other two girls. Irish got into her car and attempted to put her keys into the ignition, but dropped her keys on the floor. He assisted Irish in finding her keys. He then stated that he was standing directly beside the driver's side door of Irish's vehicle, when he observed Irish's vehicle lurch forward and hit the woman with whom she had been fighting. He explicitly averred that, "Irish's vehicle did not go backwards, then stop, and then go forward. It went immediately forward after [Irish] engaged the transmission." After she hit the woman, Irish immediately left the scene, but came back a few moments later and offered aid to her. He also indicated that Irish did not appear to be under the influence of alcohol throughout the evening, or immediately before the altercation.
 {¶ 14} According to an affidavit, attached to Irish's motion for summary judgment, of Forrest E. Diehl ("Diehl"), a licensed professional clinical counselor, a supervising counselor, a board certified forensic examiner, and a fellow of the American College of Forensic Examiners, he conducted an examination of Irish regarding the incident. The purpose of the examination was to aid the Ashtabula County Court of Common Pleas in sentencing Irish. In his authenticated report, attached to his affidavit, he concluded that the conduct of Irish was suggestive of a panic response to a stressful event, and that it was likely that, while in a state of panic while trying to escape, Irish placed the transmission of the vehicle into the drive position rather than the reverse position. He also noted that Irish did report consuming four twelve-ounce beers and two one-ounce shots of vodka, from approximately 9:00 p.m. until 12:00 a.m. Irish also reported taking the antidepressant Paxil on the day in question. He opined that the amount of alcohol alone would not have contributed to her panic response, but that the combination of alcohol, Paxil, and her history of domestic violence may have contributed to her panic response of being assaulted by the women at the Galley.
 {¶ 15} The Ashtabula County Sheriff arrested Irish. She was charged with driving under the influence, felonious assault, and two counts of aggravated vehicular assault. She was asked to take a breathalyzer test, but she refused. On October 20, 2003, Irish entered a plea of guilty to one count of aggravated vehicular assault, a felony of the fourth degree, in violation of R.C.2903.08(A)(2). The other counts were dismissed.
 {¶ 16} On May 18, 2005, the trial court granted summary judgment in favor of Nationwide in Case Number 2004 CV 826, and in favor of the Galley, and R-Janat in Case Number 2004 CV 601, and against Irish in both cases.[3] It is from this judgment that Gough appeals, raising the following sole assignment of error:
 {¶ 17} "The trial court erred in finding that tortfeasor [Irish's] actions were reckless and thus intentional thereby granting summary judgment in favor of [appellees]."
 {¶ 18} In order for a summary judgment to be granted, the moving party must prove: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 19} The Ohio Supreme Court stated in Dresher v. Burt
(1996), 75 Ohio St.3d 280, 296: "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the recordwhich demonstrate the absence of a genuine issue of fact on amaterial element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 20} If the moving party satisfies this burden, then the nonmoving party has the burden, pursuant to Civ.R. 56(E), to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. TheBrown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 21} In the case sub judice, the trial court relied uponNationwide Mut. Fire Ins. Co. v. Kubacko (1997),124 Ohio App.3d 282, in granting summary judgment to Nationwide and appellees. The trial court held that since the offense of aggravated vehicular assault that Irish pleaded guilty to involved recklessly causing serious physical harm while operating a motor vehicle, and according to Kubacko, reckless conduct is the equivalent of willful conduct in a civil case, then the actions of Irish fell within the coverage exclusion of appellee's insurance policy. Further, the trial court held that appellees "* * * cannot be liable for actions that were not reasonably under their control and that occurred outside their premises. Whether or not Irish was noticeably intoxicated when served intoxicating beverages by [employees at the Galley] would not change this result."
 {¶ 22} Based on our de novo review, we affirm the trial court's granting of summary judgment to appellees, albeit for different reasons than those given by the trial court.
 {¶ 23} R.C. 2307.60 gives anyone injured by criminal actions a right to fully recover their damages in a civil action. However, "[t]he legislature limited this right with the enactment of R.C. 4399.18 in an attempt to codify the existing common law policy regarding the liability of others for the actions of intoxicated persons." Aubin v. Metzger, 3d Dist. No. 1-03-08, 2003-Ohio-5130, at ¶ 14.
 {¶ 24} The first part of R.C. 4399.18 provides in part that "no person * * * who suffers personal injury, death, or property damage as a result of the actions of an intoxicated person has a cause of action against any liquor permit holder or an employee of a liquor permit holder who sold beer or intoxicating liquor to the intoxicated person unless the personal injury, death, or property damage occurred on the permit holder's premises or in aparking lot under the control of the permit holder and wasproximately caused by the negligence of the permit holder or anemployee of the permit holder." (Emphasis added.)
 {¶ 25} The second part of R.C. 4399.18 provides in relevant part that "[a] person has a cause of action against a permit holder or an employee of a permit holder for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from aparking lot under the permit holder's control only when both of the following can be shown by a preponderance of the evidence:
 {¶ 26} "(A) The permit holder or an employee of the permit holder knowingly sold an intoxicating beverage to * * * [a] noticeably intoxicated person in violation of division [4301.22(B)];
 {¶ 27} "(B) The person's intoxication proximately caused the personal injury, death, or property damage." (Emphasis added.)
 {¶ 28} In the case sub judice, Gough could not have a cause of action under the first scenario, since the injury was not caused by "the negligence of the permit holder or an employee of the permit holder." R.C. 4399.18. Thus, Gough's cause of action, if there is one, arose out of the second scenario. The trial court granted summary judgment because it determined that Irish's actions were reckless, which it equated to intentional, and thus the actions were not negligent as required by R.C. 4399.18.
 {¶ 29} Gough contends that an issue of material fact exists as to whether Irish acted willfully or intentionally because Irish entered a plea of guilty to an offense that incorporates the operation of a motor vehicle while under the influence of alcohol, and not an intentional act of injuring someone. In her brief, Gough even sets forth the elements of R.C. 2903.08(A)(1), the offense to which she claims Irish entered a plea of guilty to, and upon which her core argument is based. However, after reviewing the record on appeal, it is clear that Irish did not plead guilty to R.C. 2903.08(A)(1), but rather R.C.2903.08(A)(2).
 {¶ 30} R.C. 2903.08 sets forth the elements for aggravated vehicular assault. R.C 2903.08(A)(1)(a) provides in part that: "[n]o person, while operating or participating in the operation of a motor vehicle * * * * shall cause serious physical harm to another person * * * [a]s the proximate result of * * * [driving while under the influence of alcohol or drugs] * * *."
 {¶ 31} R.C. 2903.08(A)(2)(b) provides in part that: "[n]o person, while operating or participating in the operation of a motor vehicle * * * * shall cause serious physical harm to another person * * * in any of the following ways: * * * [r]ecklessly."
 {¶ 32} Nevertheless, Gough also argues that a material fact exists as to whether Irish acted recklessly, thus we will proceed as if she had argued the correct statutory provision. However, for the reasons given in the following analysis, Gough's arguments have no bearing on our disposition of this appeal.
 {¶ 33} R.C. 4301.22(B) provides that no permit holder may sell intoxicating liquor to an intoxicated person. R.C. 4399.01
creates a cause of action against a person selling intoxicating liquors that cause such intoxication. The relevant portion of R.C. 4399.18 provides, inter alia, that a person has a cause of action against a permit holder for injuries caused by the negligent actions when the permit holder "knowingly sold an intoxicating beverage to * * * [a] noticeably intoxicated person."
 {¶ 34} After examining the record on appeal, we conclude that no evidence was presented to show that a material question of fact remains as to whether Horn, as an employee of the Galley, sold Irish intoxicating liquors when Irish was noticeably intoxicated. In fact, there was no evidence that Irish was intoxicated, let alone noticeably so.
 {¶ 35} Again, Irish herself denied being intoxicated. Horn, the bartender, testified that Irish was not intoxicated. Starr did not testify as to whether Irish was intoxicated. Nemeth stated that Irish did not appear to be under the influence of alcohol. Diehl, a licensed professional clinical counselor, opined that the amount of alcohol alone that Irish consumed would not have contributed to her panic response.
 {¶ 36} Without evidence showing that Irish was noticeably intoxicated, we conclude that no material question of fact remains and summary judgment for appellee was appropriate. Thus, Gough's sole assignment of error lacks merit.
 {¶ 37} The judgment of the Ashtabula County Court of Common Pleas is affirmed.
Rice, J., O'Toole, J. concur.
[1] We note that on February 28, 2005, Gough filed "Plaintiff's Notice of Filing with the Court the Deposition of Elizabeth Gough." However, the actual filing of Gough's deposition is not indicated on the docket, nor is the deposition in the record on appeal in this case or in the companion case released the same day as this case, Nationwide Mut. Ins. Co. v. Irish, Gough,
11th Dist. No. 2005-A-0037. We further note that the record also reflects that on February 28, 2005, Gough filed a notice in both cases that her deposition was taken, stating that, "[t]he original transcript of this deposition has been filed in Ashtabula County Common Pleas Case No. 04 CV 826, NationwideMutual Ins. Co. v. Laura Lynn Irish, et al." However, a thorough examination of the record in both cases reveals that Gough's deposition is not in the record on appeal.
[2] According to Niemi's affidavit, he is also president of R-Janat.
[3] In the companion case, Gough also appealed the trial court's granting of summary judgment in favor of Nationwide. See fn. 1.