NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee,

v.

IRISH et al.; Gough, Appellant.

[Cite as *Nationwide Mut. Ins. Co. v. Irish,* 167 Ohio App.3d 762, 2006-Ohio-3227.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2005–A–0037.

Decided June 23, 2006.

Pfau, Pfau & Marando and John C. Pfau, for appellee.

R. Jack Clapp & Associates Co., L.P.A., and R. Jack Clapp, for appellant.

DONALD R. FORD, Presiding Judge.

{¶ 1} Appellant, Elizabeth Gough, appeals from the May 18, 2005 judgment entry of the Ashtabula County Court of Common Pleas, granting the motion for summary judgment of appellee, Nationwide Mutual Insurance Company ("Nationwide").

{¶ 2} On June 22, 2004, in case No. 2004 CV 601, Gough filed a complaint for personal injuries against Laura Lynn Irish, the Galley, R–Janat, Inc. ("R–Janat"), owner of the Galley, and Allstate Indemnity Company ("Allstate"), Gough's uninsured-motorist carrier. In her complaint, Gough alleged, inter alia, that on or about June 23, 2003, she and Irish were patrons of the Galley and that Irish negligently, carelessly, and recklessly struck her with her motor vehicle, pinning her against an exterior wall. Further, Gough maintained that Irish was under the influence of alcohol at the time of the incident, that the Galley and/or its employees negligently served alcohol to Irish after she was noticeably

intoxicated, and that Irish's intoxication was the proximate cause of Gough's injuries.

{¶ 3} On August 20, 2004, in case No. 2004 CV 826, Nationwide filed a complaint for a declaratory judgment against Irish, the Galley, R–Janat, Allstate, and Gough. Nationwide claimed that at the time of the incident, it insured Irish through an automobile-insurance policy. Nationwide sought a declaratory judgment from the trial court that pursuant to its policy with Irish, specifically a coverage exclusion, it did not have to insure Irish for the incident that occurred on June 23, 2003, due to Irish's alleged malicious, willful, and wanton conduct.

{¶ 4} On February 17, 2005, Nationwide filed a motion for summary judgment pursuant to Civ.R. 56, arguing that summary judgment was appropriate based upon the declaratory-judgment claim that it filed on August 20, 2004.

{¶ 5} On February 17, 2005, the Galley and R–Janat filed a motion for summary judgment, arguing that they could not be held liable under R.C. 4399.18 and thus were entitled to judgment as a matter of law.

{¶ 6} On February 18, 2005, Irish filed a motion for summary judgment pursuant to Civ.R. 56, requesting the court to declare that Nationwide had an obligation to provide her with insurance coverage, because she did not act intentionally and/or willfully.

{¶ 7} Gough filed a combined brief in opposition to Nationwide's, the Galley's, and R–Janat's motions for summary judgment on March 18, 2005.

{¶ 8} According to the depositions and affidavits in the record on appeal, the following disputed facts gave rise to this appeal.[1] According to Irish's deposition, on the evening of June 23, 2003, she got off work at 9:00 p.m. and went to the Galley. She admitted to having four beers and two shots of vodka between approximately 9:30 p.m. and 11:30 p.m., but denied being intoxicated and denied that alcohol had anything to do with the incident. She became upset because her boyfriend, David Reushling, was ignoring her. She was also upset because Reushling was dancing with Gough. At approximately 11:30 p.m., Irish told her friend John Nemeth that she wanted to go home. She stated that she was trying to leave, Gough approached her, grabbed her, and pulled her hair. At that point,

---

1. On February 28, 2005, Gough filed a "Plaintiff's Notice of Filing with the Court the Deposition of Elizabeth Gough." However, the actual filing of Gough's deposition is not indicated on the docket, nor is the deposition in the record on appeal in this case or in the companion case released the same day as this case, Gough v. Galley, 11th Dist. No. 2005–A–0066. The record also reflects that on February 28, 2005, Gough filed a notice in both cases that her deposition was taken, stating that "[t]he original transcript of this deposition has been filed in Ashtabula County Common Pleas Case No. 04 CV 826, Nationwide Mutual Ins. Co. v. Laura Lynn Irish, et al." However, a thorough examination of the record in both cases reveals that Gough's deposition is not in the record on appeal.

Irish went outside because she wanted to go home. As she was getting into her car, she dropped her keys and Nemeth helped her find them. She indicated that Gough was standing in front of her car, spitting on it and yelling names at her. Irish stated, "[T]hat's when I meant to put my car in reverse, and I put it in drive and I struck her." However, she indicated that she was not aware of whether she had actually pinned Gough to the wall of the Galley. Irish also denied that she put her car into reverse, backed up, and then put her car back into drive, hitting Gough. Irish stated that after she struck Gough, she "panicked * * * [and] left the parking lot and went down to the BP Station, and I turned around and I came back, and I was holding ice on her leg * * * until the ambulance got there."

{¶ 9} Olivia Horn, the bartender on duty at the Galley on June 23, 2003, stated in her deposition that at the time of the incident, she was living with the owner of the Galley, Joe Niemi.[2] She indicated that after approximately 8:30 p.m., she was the only employee working that night, and that she was responsible for cooking as well as bartending. She opined that there were approximately 20 patrons that evening. She did not remember an altercation inside the bar; however, she became aware that there was a fight outside. She looked outside and saw Gough and Irish arguing. Horn indicated that before Irish got into her car, "[Irish] kept saying 'I just want to go home,' and at that point * * * Crystal, Leslie and [Gough] * * * were all kind of ganging up on [Irish]." Horn stated, "[Irish] proceeded to get inside her vehicle, and they were giving each other the finger and making obscenities at each other, and [Irish] put the car in reverse, and then when [Gough] gave her the finger, [Irish] put it in drive." When asked how she knew that Irish put her car into reverse, Horn replied, "She probably backed up about six inches," and Horn stated that after Gough gave her the finger, Irish put her car in drive and went forward "[p]retty fast." Horn then stated, "At that point [Irish] smashed Gough against the building, put her car in reverse and took off."

{¶ 10} Horn further indicated that prior to working at the Galley, she had received a full day of training to identify customers who were intoxicated. She was taught to look for shaking hands, stumbling, slurred speech, redness of the eyes, and obnoxious and loud behavior. She stated that several times a week, she had to stop serving customers who were intoxicated. On the night in question, she opined that neither Irish nor Gough nor any of the other customers were intoxicated, nor did she contemplate not serving them any more alcohol.

{¶ 11} Horn admitted in her deposition that she contradicted what she had originally said in her written statement to the police immediately following the

---

2. According to Niemi's affidavit, he is also president of R–Janat.

incident. She agreed that immediately following the incident, she had stated, "I stepped out front to make sure the problem was over when [Irish] got into her Jeep, flipped off the victim, and proceeded to put her car in drive and rammed into the victim." In her deposition, however, she stated that she observed Irish back up first, and then go forward. When asked if her statement that she gave to police on the night of the incident would be more accurate than her deposition testimony, more than a year and a half later, she responded, "I don't know how to answer that."

{¶ 12} According to the affidavit of Forest Starr Jr., attached to Nationwide's motion for summary judgment, he was a patron at the Galley on the night in question. He averred that around midnight, he observed Irish and Gough, as well as two other customers, begin arguing inside the restaurant and then proceed outside. He followed them outside. Irish was trying to go home, and the other women were still fighting. Irish and another woman, Crystal Garney, were pulling each other's hair. He saw Irish get into her car, put it into reverse, and start to back out of the parking spot. He indicated that at that time, Gough and Irish starting "flipping each other off," and then Gough spat on the front of Irish's vehicle. He then saw Irish stop her car, put it into drive, and "with an angry look on her face she hit the accelerator and rammed her car into [Gough]." He indicated that after Irish hit Gough, she immediately left in her car, but came back a minute later to assist her.

{¶ 13} According to the affidavit of Nemeth, attached to Irish's motion for summary judgment, he was also a patron at the Galley on the night in question. He averred that he observed Irish and two other women fighting, shouting, pushing, and pulling hair. He stated that Irish went outside and was followed by the other two girls. Irish got into her car and attempted to put her keys into the ignition, but dropped her keys on the floor. He assisted Irish in finding her keys. He then stated that he was standing directly beside the driver's side door of Irish's vehicle, when he observed Irish's vehicle lurch forward and hit the woman with whom she had been fighting. He explicitly averred that "Irish's vehicle did not go backwards, then stop, and then go forward. It went immediately forward after [Irish] engaged the transmission." After she hit the woman, Irish immediately left the scene, but came back a few moments later and offered aid to her. He also indicated that Irish did not appear to be under the influence of alcohol throughout the evening or immediately before the altercation.

{¶ 14} According to an affidavit attached to Irish's motion for summary judgment, Forrest E. Diehl, a licensed professional clinical counselor, a supervising counselor, a board-certified forensic examiner, and a fellow of the American College of Forensic Examiners, conducted an examination of Irish regarding the incident. The purpose of the examination was to aid the Ashtabula County Court

of Common Pleas in sentencing Irish. In his authenticated report, which was attached to his affidavit, he concluded that the Irish's conduct was suggestive of a panic response to a stressful event and that it was likely that while in a state of panic while trying to escape, Irish placed the transmission of the vehicle into the drive position rather than the reverse position. He also noted that Irish did report consuming four 12-ounce beers and two one-ounce shots of vodka between approximately 9:00 p.m. and 12:00 a.m. Irish also reported taking the antidepressant Paxil on the day in question. He opined that the amount of alcohol alone would not have contributed to her panic response, but that the combination of alcohol, Paxil, and her history of domestic violence may have contributed to her panic response to being assaulted by the women at the Galley.

{¶ 15} The Ashtabula County Sheriff arrested Irish. She was charged with driving under the influence, felonious assault, and two counts of aggravated vehicular assault. She was asked to take a breathalyzer test, but she refused. On October 20, 2003, Irish entered a plea of guilty to one count of aggravated vehicular assault, a felony of the fourth degree, in violation of R.C. 2903.08(A)(2). The other counts were dismissed.

{¶ 16} On May 18, 2005, the trial court granted summary judgment in favor of Nationwide in case No. 2004 CV 826, and in favor of the Galley, and R–Janat in case No. 2004 CV 601, and against Irish in both cases.[3] It is from this judgment that Gough appeals, raising the following sole assignment of error:

{¶ 17} "The trial court erred in finding that the plea of guilty to an offense to which alcohol use was an element should be construed to be intentional and/or willful conduct and thereby granting summary judgment in favor of [Nationwide]."

{¶ 18} In order for a summary judgment to be granted, the moving party must prove that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197.

{¶ 19} The Ohio Supreme Court stated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 296, 662 N.E.2d 264, that "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact*

---

**3.** In the companion case, Gough also appealed the trial court's granting of summary judgment in favor of the Galley and R–Janat. See fn. 1.

*on a material element of the nonmoving party's claim.* The 'portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case." (Emphasis sic.)

{¶ 20} If the moving party satisfies this burden, then the nonmoving party has the burden, pursuant to Civ.R. 56(E), of providing evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. *Brown* stated, "[W]e review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.

{¶ 21} In the case sub judice, the trial court relied upon a case from this district, *Nationwide Mut. Fire Ins. Co. v. Kubacko* (1997), 124 Ohio App.3d 282, 706 N.E.2d 17, in granting summary judgment. The trial court held that since the offense of aggravated vehicular assault that Irish pleaded guilty to involved recklessly causing serious physical harm while operating a motor vehicle, and according to *Kubacko,* reckless conduct is the equivalent of willful conduct in a civil case, then the actions of Irish fell within the coverage exclusion of appellee's insurance policy.

{¶ 22} First, we note that "[i]n a declaratory judgment action brought by an insurer, the burden is on the insurer to establish an exclusion. * * * 'In order to avoid coverage on the basis of an intentional act exclusion, the insurer must demonstrate that the injury itself was intentional or expected.' " Id. at 288, 706 N.E.2d 17, quoting *W. Res. Mut. Ins. Co. v. Campbell* (1996), 111 Ohio App.3d 537, 541, 676 N.E.2d 919, 922.

{¶ 23} The coverage exclusion at issue provides in pertinent part:

{¶ 24} "This coverage does not apply to:

{¶ 25} "1. **Property damage** or **bodily injury** caused intentionally by or at the direction of an **insured**, including willful acts the result of which the **insured** knows or ought to know will follow from the **insured's** conduct. * * * " (Boldface sic.)

{¶ 26} Gough contends that an issue of material fact exists as to whether Irish acted intentionally, because she entered a plea of guilty to an offense that incorporates the operation of a motor vehicle while under the influence of alcohol,

and not an intentional act of injuring someone. In her brief, Gough even sets forth the elements of R.C. 2903.08(A)(1), the offense to which she claims Irish entered a plea of guilty and on which her core argument is based. However, after reviewing the record on appeal, it is clear that Nationwide is correct in its assertion that Irish did not plead guilty to R.C. 2903.08(A)(1) but rather to R.C. 2903.08(A)(2).

{¶ 27} R.C. 2903.08 sets forth the elements for aggravated vehicular assault. R.C. 2903.08(A)(1)(a) provides that "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person * * [a]s the proximate result of * * * [driving while under the influence of alcohol or drugs] * * *."

{¶ 28} R.C. 2903.08(A)(2)(b) provides that "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person * * * in any of the following ways: * * * [r]ecklessly."

■ {¶ 29} Nationwide argues that since Gough's appeal is based on the wrong statute, Gough's appeal loses all merit. However, in her brief, Gough also argues that a material issue of fact exists as to whether Irish acted recklessly. She argues that because Irish did not intend to place her car in the wrong gear, i.e., she accidentally placed her car in the wrong gear, it was not reckless conduct and a material issue of fact remains. Nationwide further contends, though, that because Irish entered a guilty plea to an offense that has a required element of recklessness, Irish admitted to willfully causing harm to Gough for insurance-coverage exclusion considerations and, thus, no material issues of fact remain.

{¶ 30} Gough and Nationwide, as did the trial court, cite *Kubacko*, 124 Ohio App.3d 282, 706 N.E.2d 17, in support of their position. Thus, a thorough review of that case is necessary.

{¶ 31} In *Kubacko*, the insurance company had filed a declaratory judgment, requesting the trial court to declare that the incident claimed by the insured and the victim was excluded from coverage due to the reckless act of child endangerment. The trial court granted summary judgment for the insured, and the insurance company appealed. We reversed.

{¶ 32} First, we reviewed the inferred-intent rule articulated by the Supreme Court of Ohio in child sexual molestation cases. " '[U]nder the inferred intent rule, intent to injure is inferred as a matter of law from the act of sexual abuse of a child itself, as harm is deemed inherent in the sexual molestation, regardless of the offender's expression of subjective intent.' * * * The act of child sexual molestation and the harm caused thereby are 'virtually inseparable.' " *Kubacko* at 288, 706 N.E.2d 17, quoting *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 36–37, 665 N.E.2d 1115.

{¶ 33} With respect to child-endangerment cases, we noted that " 'the existence of the culpable mental state of recklessness is an essential element of the crime of endangering children * * *.' " *Kubacko* at 288, 706 N.E.2d 17, quoting *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975, syllabus. We also recognized that "[r]ecklessness has been held to be the functional equivalent of willfulness in the civil context," and stated that "[f]or the purpose of deciding whether or not the exclusion here has been triggered, reckless action is tantamount to willful conduct." *Kubacko* at 288, 706 N.E.2d 17.

{¶ 34} We then explained that " '[t]he Supreme Court of Ohio has held that the submission of a guilty plea to a criminal charge, for a crime of which *intent* is an essential element, is strong enough proof so as to eliminate all doubt as to whether an insured's conduct would be deemed "intentional" for purposes of an "intentional act" exclusion.' " (Emphasis sic.) Id. at 289, 706 N.E.2d 17, quoting *Motorists Mut. Ins. Co. v. Manning* (Aug. 29, 1997), 1997 WL 531235, at 3. We further stated, "The inferred intent rule has also been applied to injuries stemming from reckless conduct." *Kubacko,* 124 Ohio App.3d at 289, 706 N.E.2d 17.

{¶ 35} However, we refused to apply the inferred-intent rule in *Kubacko,* concluding that "[u]nder the facts of [a child-endangerment] case, we reject the notion that a guilty plea to an offense in which recklessness is an essential element constitutes irrefutable evidence of the certainty of the occurrence of harm." Id. This is because "[r]eckless and/or wilful [sic] conduct involves a different degree of volitional action on the part of the actor than intentional conduct." Id. Further, we noted that " ' "[r]eckless misconduct" involves a "conscious choice of a course of action, either with the knowledge of serious danger to others involved in it or with the knowledge of facts that would disclose this danger to any reasonable man." [Restatement of the Law 2d, Torts (1965) 590, Section 500.].' " Id. at 290, 706 N.E.2d 17, quoting *Ickes v. Tille* (1996), 110 Ohio App.3d 438, 442, 674 N.E.2d 738.

{¶ 36} Thus, in *Kubacko,* we rejected the insurer's proposition that insurance companies should not have to subsidize an injury that resulted from a conviction of child endangering. We concluded that this proposition "casts too broad a net by excluding coverage for injuries that arise as the result of behavior which is undoubtedly criminal under the relevant statute, but involves a set of circumstances that do not indicate heinous, or egregious conduct." Id. at 291, 706 N.E.2d 17. Further, we reasoned that "reckless conduct is not categorically excluded from the ambit of insurance coverage." Id. at 292, 706 N.E.2d 17.

{¶ 37} In the case sub judice, Irish pleaded guilty to aggravated vehicular assault, which contains a required element of recklessness, as well as serious physical harm to another person. Thus, we do not disagree that the inferred-

intent rule could apply. However, for the reasons that follow, the inferred-intent rule should not summarily exclude Gough's injuries from the "ambit of insurance coverage." This case is a perfect example of why, in *Kubacko*, we held that "reckless conduct is not categorically excluded from the ambit of insurance coverage." Id. Thus, we agree with Gough that viewing the facts in a light most favorable to her, material issues of fact remain as to whether Irish acted intentionally.

{¶ 38} After reviewing the record, reasonable minds could conclude that Irish did in fact panic, accidentally put her car into drive rather than reverse, and subsequently strike Gough. Nationwide argues that Irish has "every reason to deny intent, namely to establish insurance coverage for her willful actions and to avoid personal financial exposure for her misdeeds." We agree that " '[b]ecause it is always in the interest of an insured to establish coverage and avoid policy exclusions, an insured's self-serving statements denying intent to injure are often "of negligible value in demonstrating intent or expectation." ' " *Nationwide Mut. Ins. Co. v. Layfield,* 11th Dist. No. 2002–L–155, 2003-Ohio-6756, at ¶ 12, quoting *Aguiar v. Tallman* (Mar. 15, 1999), 7th Dist. No. 97 CA 116, 1999 WL 148367, quoting *W. Res. Mut. Ins. Co. v. Campbell,* 111 Ohio App.3d at 541, 676 N.E.2d 919.

{¶ 39} However, in the instant matter, Irish was not the only person to claim that it was an accident. Diehl, a licensed counselor and forensic examiner, also reported that Irish's actions were indicative of a panic response. Nemeth, who was standing beside the driver's side door of Irish's vehicle, stated that Irish put her car into drive and then lurched forward, hitting Gough. He did not state that she backed up first and then went forward into Gough, which would more likely imply that her act was intentional.

{¶ 40} In addition, Horn stated in her report to the police immediately following the accident that " 'when [Irish] got into her Jeep, [she] flipped off the victim, and proceeded to put her car in drive and rammed into the victim.' " However, in her deposition, a year and a half later, she contradicted her earlier statement. She stated in her deposition testimony that Irish backed up first, and then after Irish and appellant flipped each other off, Irish put her car into drive and hit Gough.

{¶ 41} Starr, on the other hand, stated in his affidavit that he observed Irish first put her car into reverse, and then, with an angry look on her face, put her vehicle into drive, and hit Gough with it.

{¶ 42} Thus, viewing the evidence in a light most favorable to Gough, we conclude that material issues of fact remain as to whether Irish intentionally or accidentally struck Gough with her vehicle. If the trier of fact concludes that

Irish panicked, accidentally striking Gough with her vehicle, then her conduct would not be so egregious that policy considerations would place it outside the sphere of insurance coverage. If, on the other hand, the trier of fact concludes that Irish backed her vehicle out of its parking spot, ramming her vehicle into Gough intentionally with an angry look on her face, then we agree that Nationwide should not have to insure such heinous conduct.

{¶ 43} As we recently stated in *Bailey v. Bevilacqua*, 158 Ohio App.3d 382, 2004-Ohio-4392, 815 N.E.2d 1136, at ¶ 35: " '[f]rom the standpoint of an insurance company, an "expected or intended injury" exclusion prevents individuals from purchasing insurance as a shield for their *anticipated intentional misconduct*.' " (Emphasis sic.) However, under the facts of this case, if the trier of fact determines that Irish did not act intentionally, then the act is "neither anticipated nor wrongful from the standpoint of the insured." Id. Nor would it "indicate heinous or egregious conduct." *Kubacko*, 124 Ohio App.3d at 292, 706 N.E.2d 17.

{¶ 44} For the foregoing reasons, Gough's sole assignment of error is well taken. The judgment of the Ashtabula County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

RICE and O'TOOLE, JJ., concur.