OPINION
{¶ 1} Intervenor-appellant the Estate of David Benna appeals a judgment of the Court of Common Pleas of Stark County, Ohio, which overruled its motion to vacate the previous declaratory judgment of the court. Plaintiff-appellee Western Reserve Casualty Company has cross-appealed, urging the court erred in permitting the Estate to intervene in the action. The Estate assigns two errors to the trial court:
 {¶ 2} "I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO HOLD AN EVIDENTIARY HEARING DESPITE THE EXISTENCE OF ALLEGATIONS OF OPERATIVE FACTS WHICH WOULD WARRANT RELIEF UNDER CIV. R. 60 (B).
 {¶ 3} "II. WHETHER THE TRIAL COURT ERRED BY DENYING THE ESTATE'S MOTION FOR RELIEF PURSUANT TO CIV. R. 60(B), ESPECIALLY IN LIGHT OF WESTERN RESERVE'S FAILURE TO PROVE THAT CAROL GLAGOLA'S ACT WAS INTENTIONAL AND THAT SHE SPECIFICALLY INTENDED THE INJURY THAT RESULTED."
 {¶ 4} Western Reserve assigns two errors to the trial court:
 {¶ 5} "I. THE TRIAL COURT ERRED IN PERMITTING THE ESTATE OF DAVID BENNA TO INTERVENE IN THIS ACTION POST-JUDGMENT.
 {¶ 6} "II. THE TRIAL COURT ERRED IN GRANTING INTERVENTION BECAUSE THE ESTATE OF DAVID BENNA DOES NOT HAVE A RECOGNIZED LEGAL INTEREST, AND THUS LACKED STANDING, IN WESTERN RESERVE'S DECLARATORY JUDGMENT ACTION."
 Statement of the Facts and Procedure {¶ 7} Western Reserve insured Carol Glagola with a homeowner's policy for her residence. While at the residence, Glagola shot and killed her live-in boyfriend, David Benna. She was charged with murder, but was convicted of reckless homicide,State of Ohio v. Carol Glagola, Stark County Common Pleas, No. 2002-CR-1070. Benna's estate notified Glagola of its intention to bring a claim against her for wrongful death. The Estate and Western Reserve also had some communications about the claim. Glagola is not a party to this appeal.
 {¶ 8} Western Reserve filed a declaratory judgment action against Glagola, arguing Glagola's actions were intentional, and not covered by Western Reserve's homeowner's insurance policy. Western Reserve filed its complaint for declaratory judgment on November 14, 2003, and its complaint indicates Glagola was served in prison. The Estate was not made a party.
 {¶ 9} Glagola did not defend, and on February 17, 2004, Western Reserve filed a motion for default judgment, and/or for summary judgment. On March 15, 2004, the court sustained the motion and entered final judgment on behalf of Western Reserve. The court found Glagola's conviction for reckless homicide triggers the "intentional acts" exclusion in the Western Reserve policy and bars recovery under the policy. The court concluded Western Reserve had no duty to defend Glagola in any civil claims arising out of the shooting.
 {¶ 10} On March 14, 2005, the Estate filed its motions to intervene and to vacate the prior judgment pursuant to Civ. R. 60 (B). On August 10, 2005, the court sustained the Estate's motion to intervene, finding it would be patently unjust to bar an injured party from an opportunity to present evidence the action of the insured was not intentional and insurance coverage existed, citing Auto-Owners Insurance v. Perry (1993),84 Ohio App. 3d 787.
 {¶ 11} The policy in effect at the time Benna was shot contained the following exclusion:
 {¶ 12} "COVERAGE E — PERSONAL LIABILITY AND COVERAGEF-MEDICAL PAYMENTS TO OTHERS: to not apply "bodily injury or property damage"
 {¶ 13} a. Which is expected or intended by the "insured" (emphasis sic).
 {¶ 14} The court reviewed Western Reserve's policy and found Glagola's conviction for reckless homicide triggered the intentional acts exclusion, citing Allstate Insurance Company v.Cole (1998), 129 Ohio App. 3d 334. The court found the Estate had not come forward with operative facts showing Glagola was entitled to coverage under her policy, or which would rebut its finding a criminal conviction in and of itself, conclusively establishes intent for purposes of applying the intentional acts exclusion.
 {¶ 15} We will address Western Reserve's cross-appeal first.
 {¶ 16} Western Reserve's cross-assignments of error underscore the unusual procedural history of this case. The insurance company secured a declaratory judgment against its insured, and the Estate was not made a party to the action. Nearly a year elapsed before the Estate filed its motion to intervene in the matter and its motion to vacate the judgment.
 {¶ 17} The court cited Civ. R. 24 (A), which states in pertinent part:
 {¶ 18} "Upon timely application anyone shall be permitted to intervene in an action (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may, as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the existing party."
 {¶ 19} Western Reserve argues the Estate's motion was untimely and the Estate has neither a legal interest in the outcome nor standing in the matter. It argues its contract is with Carol Glagola, and only if the Estate had obtained a judgment against her would it have a claim against the insurer.
 {¶ 20} Our standard of reviewing the court's ruling on the motion to intervene is the abuse of discretion standard, see, e.g., Jamestown Village Condominium Owners Association v. MarketMedia Research, Inc. 1994), 96 Ohio App. 3d 674. The Supreme Court has repeatedly held abuse of discretion implies the court's attitude is unreasonable, arbitrary or unconscionable, Blakemorev. Blakemore (1983), 5 Ohio St. 3d 217.
 {¶ 21} In the Perry case cited by the trial court, this court found even if the insured fails to defend, the injured party must nevertheless be given an opportunity to present evidence the action of the insured was not intentional and therefore insurance coverage exists.
 {¶ 22} With regard to the timeliness issue, to hold an applicant may never intervene post judgment would be contrary to the intent of the Rule and would encourage plaintiffs to rush for declaratory judgments. The Rule does not define the term "timely" and thus it is a matter for the court's discretion.
 {¶ 23} We find the trial court did not abuse its discretion in permitting the Estate to intervene in the action. Both cross-assignments of error are overruled.
 {¶ 24} We will address both the Estate's assignments of error together for the sake of clarity.
 {¶ 25} Civ. R. 60 (B) states in pertinent part:
 {¶ 26} "* * * On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation."
 {¶ 27} In GTE Automatic Electric v. ARC Industries (1976),47 Ohio St. 2d 146, the Ohio Supreme Court set forth the factors a movant must demonstrate in order to be entitled to relief: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60; and (3) the motion is made within a reasonable time. The trial court overruled the Estate's motion to vacate because it found the Estate had not demonstrated the court would have interpreted the language of the insurance policy differently if it had been an original party to the action.
 {¶ 28} The trial court relied on the case of AllstateInsurance Company v. Cole (1998), 129 Ohio App. 3d 334, 117 N.E. 2d 816, as authority for the proposition a conviction for involuntary manslaughter, which contains an element of recklessness, conclusively establishes an intentional act, and triggers the intentional acts exclusion. The conviction bars liability coverage in a wrongful death action brought by the victim or the victim's successor against the insured. For the following reasons, we find Physician's Insurance Company of Ohiov. Swanson (1991), 58 Ohio St. 3d 189, 569 N.E. 2d 906, controls, and requires reversal.
 {¶ 29} In Swanson, the Supreme Court reviewed a case similar to the one at bar. Two groups of teenage children clashed at a recreational area, and one of the children, Bill Swanson, went to his home and returned with a BB gun. Bill aimed the BB gun in the direction of the other group and fired it three times. He testified he had been aiming at a sign on a tree some ten to fifteen feet from the group. He testified he intended to scare the other children, and because he was 70 to 100 feet away, he did not believe he would hit any of the children. However, at least two children were struck, including Todd Baker, who lost his right eye. Baker brought an action against Swanson's parents. Swanson's insurance company argued Bill Swanson's intentional act in firing the BB gun triggered the "intentional acts" exclusion in their contract.
 {¶ 30} The language in the insurance policy excluded coverage for bodily injury to property damage which is expected or intended by the insured. It defined accident as "* * * an event or serious of unrelated events that unexpectedly, unintentionally and suddenly causes personal injury or property damage during the policy period." There was no coverage for personal injury or property damage caused intentionally.
 {¶ 31} In Swanson, the Supreme Court distinguished its prior case of Preferred Risk Insurance Company v. Gill (1987),30 Ohio St. 3d 108, 507 N.E. 2d 1118. Gill held an insurer has no duty to defend to indemnify its insured where the insurer demonstrates the act of the insured was intentional and therefore outside of the policy coverage. The Swanson court pointed outGill involved a case where the perpetrator had pled guilty to aggravated murder with specifications, for killing an 11 year old girl. Gill held because an essential element of aggravated murder is an intention to cause the victim's death, there was no duty to defend or indemnify.
 {¶ 32} The Swanson court found Gill was premised on the fact the insured's plea of guilty to aggravated murder conclusively established his intent to cause the injury. Gill
actually stands for the proposition the perpetrator must intend the injury, not just the act, for the exclusion to apply,Swanson at 191.
 {¶ 33} The Swanson court then explored other jurisdictions' case law, and found the current interpretation of Gill was consistent with the majority rule from other jurisdiction. The Supreme Court found the vast majority of courts which have considered exclusions for intentional acts have concluded that before an insurer may disclaim liability it must be shown the insured intended his act to produce the damage which did in fact occur. The Swanson court quoted Allstate Insurance v.Steinemer (CA11, 1984), 723 F2d 873, 875, "* * * an `intentional injury' exclusion will not apply if the insured intentionally does an act, but has no intent to commit harm, even if the actinvolves the foreseeable consequences of great harm or evenamounts to gross or culpable negligence." Id, (emphasis added).
 {¶ 34} The Swanson court held the rationale for this rule of law is two-fold. Not only does the plain language of the policy make reference to an intentional or expected injury, not an intentional or expected act, but many intentional acts result in wholly unintentional injuries, Id. It is for these unintentional injuries people purchase insurance.
 {¶ 35} R.C. 2901.22 sets forth the definitions for the various culpable mental states in the criminal code:
 {¶ 36} "(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
 {¶ 37} (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 {¶ 38} (C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
 {¶ 39} (D) A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."
 {¶ 40} The various culpable mental states outlined in the criminal code form a continuum from ordinary negligence to purposeful actions, with recklessness ranking just above ordinary negligence. In civil law, recklessness is construed as negligent rather than intentional. In Thompson v. McNeill (1990),53 Ohio St.3d 102, 559 N.E.2d 705, the Ohio Supreme adopted the definition of "recklessness" found in the Restatement of the Law 2d, Torts (1965): "The actor's conduct is in reckless disregard of the safety of others if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." 2 Restatement of the Law 2d, Torts (1965) at 587, Section 500.
 {¶ 41} The Swanson court held an intentional injury exclusion does not apply when there is no intention to commit harm, even if the act involves the foreseeable consequences of great harm or even amounts to gross or culpable negligence. Applying this standard to the criminal definition of recklessness, we find criminal recklessness does not translate to an intentional act under civil law.
 {¶ 42} Conversely, the Ohio Supreme Court has sharpened its definition of an intentional tort in the context of employment law. Blankenship v. Cincinnati Milacron Chemicals, Inc. (1982),69 Ohio St. 2d 60 first recognized an intentional tort exception to the Workers' Compensation exclusivity doctrine by allowing employees to bring an intentional tort lawsuit against their employers. The Supreme Court defined the term "intentional tort" in Jones v. VIP Development Company (1984), 15 Ohio St. 3d 90,472 N.E. 2d 1046. Adopting 1 Restatement of Law Second, Torts, (1965), Section 8 A, and Prosser Keeton, Law of Torts (5 Ed. 1984), the court held an intentional tort is "an act committed with the intent to injure another or committed with the belief that such injury is substantially certain occur."
 {¶ 43} In Van Fossen v. Babcock Wilcox Company (1988),36 Ohio St. 3d 100, 522 N.E. 2d 489, the court focused on the proof necessary to establish intent on the part of an employer, and held the proof required to establish an intentional tort must be beyond what is required to prove negligence or recklessness, syllabus, paragraph 6.
 {¶ 44} We find no reason why the definition of intent should be different in employment law than in the case at bar. We find the proof required to establish an intentional tort in the case at bar must be beyond evidence of recklessness. We conclude a conviction for an offense containing the element of recklessness does not, as a matter of law, trigger an intentional acts exclusion in an insurance policy.
 {¶ 45} The court found the Estate had not satisfied the first prong of the GTE analysis, because the Estate had not demonstrated had it been an original party to the action, the court would have interpreted the language of the policy differently. The court also found the Estate had not shown the existence of operant facts showing Glagola was entitled to coverage under her policy or which would rebut the notion the criminal conviction in and of itself may conclusively establish intent for purposes of applying an intentional acts exclusion.
 {¶ 46} The trial court's statement is overbroad. Under circumstances like those in Gill supra, the conviction establishes the act was intentional. However, in the case at bar, we find the criminal conviction does not in and of itself establish the act was intentional. We conclude the trial court erred in finding the Estate has not met its burden.
 {¶ 47} Ordinarily, a motion made pursuant to Civ. R. 60 (B) is fact driven, and a party cannot challenge the underlying judgment as being contrary to law, because a Civ. R. 60(B) motion is not a substitute for an appeal, Doe v. Trumbull CountyChildrens' Services Board (1986), 28 Ohio St.3d 128,502 N.E.2d 605. However, under the procedural circumstances of this case, Civ. R. 60 is the only vehicle by which the estate can hope to protect its claim. In fact, some courts have recognized a common law motion to vacate, available where the requirements of Civ.R. 60(B) cannot be met, see Kerr v. Durham (August 30, 1996) Portage App. No. 94-P-0127.
 {¶ 48} We find under the particular circumstances of this case, the Estate was not required to challenge the underlying facts, but needed only to show Glagola's conviction did not conclusively establish intent for purposes of applying the intentional acts exclusion.
 {¶ 49} The second assignment of error is sustained. However, because the facts were not in dispute the trial court did not err in failing to hold an evidentiary hearing, and thus, the first assignment of error is overruled.
 {¶ 50} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion.
By Gwin, J., Wise, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part, and the cause is remanded to the court for further proceedings in accord with law and consistent with this opinion. Costs to appellee.