OPINION
{¶ 1} Plaintiffs-appellants, David and Sally Haimbaugh (the "Haimbaughs") and Haimbaugh Farms, Inc., appeal the judgment of the Franklin County Court of Common Pleas, which denied appellants' summary judgment motion and granted a summary judgment motion from defendant-appellee, Grange Mutual Casualty Company. *Page 2 
 {¶ 2} The Haimbaughs hired Rick Seymour for a variety of tasks related to their home and business. In particular, the Haimbaughs hired Rick Seymour to remodel their home. Seymour sent his crew to remodel the home, and the workers stole items from the home. In addition, Seymour's employees damaged a bathroom that was not supposed to have been part of the remodeling project.
 {¶ 3} The Haimbaughs gave Seymour a check for the remodeling work. Seymour told the Haimbaughs that he could not cash the check, and the Haimbaughs gave Seymour another check. Thereafter, Seymour cashed both checks. Seymour then gave the Haimbaughs a check to cover the overpayment, but Seymour later cancelled the check before the Haimbaughs cashed it.
 {¶ 4} The Haimbaughs also hired Seymour to assist with their tree farm, which consists of approximately 40 to 55 acres of conifer trees. The trees are groomed for landscape use and take three or four years to mature. The Haimbaughs hired Seymour to trim trees. The Haimbaughs have consistently refused to allow anyone to cut down the trees because the trees are sold live for landscaping.
 {¶ 5} In February 2002, Seymour and his crew cut down at least 760 trees on the farm. The cut trees ranged from 15 to 20 feet tall. Seymour did not have permission to be on the tree farm without the Haimbaughs or their assistant, Jason McCoy, being present. However, Seymour and his crew cut the trees while the Haimbaughs were on vacation and without McCoy being present.
 {¶ 6} In April 2002, appellee, Seymour's insurance company, refused to cover the loss from the tree cutting incident. The Haimbaughs thereafter sued Seymour for breach of their agreements to remodel their home and to trim trees on their farm. The *Page 3 
Haimbaughs also sued Seymour for "fraudulent misrepresentation, bounced check, removal of materials and items, and trespass and destruction of trees under R.C. 901.51." The Haimbaughs also sought punitive damages.
 {¶ 7} The case was set for trial before a magistrate in June 2004, but Seymour failed to appear. The magistrate accepted evidence from the Haimbaughs and, on July 1, 2004, rendered a decision upholding their claims. The magistrate stated:
 The evidence is undisputed that Seymour and his employees failed to properly perform the renovation of [the Haimbaughs' home] but instead stole materials and items from the premises. Seymour * * * then allowed his employees to cut the trees on the * * * tree farm. Whether his actions were malicious may never be known, but they were fraudulent, reckless, and wanton and warrant imposition of punitive damages in addition to compensatory damages.
Subsequently, the trial court adopted the magistrate's decision.
 {¶ 8} Appellants then sought a declaratory judgment against appellee stating that the damage Seymour caused to their tree farm is covered by Seymour's Grange insurance policy. Appellants attached to the complaint for declaratory judgment a copy of Seymour's insurance policy, which states that the insurance covers property damage caused by an "occurrence," which the policy defines as "an accident." Both parties sought summary judgment. In doing so, the parties submitted supporting affidavits and deposition testimony.
 {¶ 9} According to David Haimbaugh's deposition testimony, Seymour explained that he and his crew cut down the trees to clear space for trimming equipment. However, Seymour testified during deposition as follows:
 [Appellee's Attorney:] And we know that there was work done to cut down trees [on the tree farm]. What, from your *Page 4 
perspective, led up to you believing that that was the work — that was work that the Haimbaughs were, in fact, asking you to do * * *?
 [Seymour:] We had had, myself and David, had discussion about trimming trees and thinning some trees out on the farm to get the nursery into a better, manageable situation. And that was the gist of the conversation, to go ahead and do that.
 [Appellee's Attorney:] Okay. And so was there — how did it come about that you understood that you should go ahead and do it? Were you initially talking about it generally speaking or did that first conversation result in him saying, go ahead and do it?
 [Seymour:] It resulted in him telling me to do it.
 * * *
 [Appellee's Attorney:] * * * [D]id you understand that [David Haimbaugh] was, in essence, saying, Rick, use your judgment, I'm authorizing you to use your judgment in how to trim and how many to thin?
 [Seymour:] That was my understanding.
 * * *
 [Appellee's Attorney:] Did you think when you walked the farm after the fact, did you think then that the Haimbaughs felt that the entire project was a disaster?
 * * *
 [Seymour:] I honestly think that [David Haimbaugh] thought none of them should have been cut. But it was my opinion to get the farm where it was supposed to be, that we had to cut some of them.
(Seymour Depo. 44-45, 47, 49-50.)
 {¶ 10} Charles West, senior litigation counsel for appellee, testified as follows during deposition. Appellee did not intervene in the Haimbaughs' lawsuit against *Page 5 
Seymour. The file pertaining to the insurance claim regarding the tree farm incident contains no copy of the complaint from that lawsuit. Had appellee received the complaint, appellee would have intervened. In May 2004, appellee received a subpoena for an individual once employed with appellee to testify in that case. The individual no longer worked with appellee, and the subpoena issuer told appellee to disregard the subpoena. Thus, no one on behalf of appellee appeared in court in the case. In October 2004, the Haimbaughs' attorney notified appellee that the Haimbaughs had obtained a judgment against Seymour in July 2004. Upon receiving the letter, West believed it was too late for appellee to intervene and file a motion to vacate the judgment.
 {¶ 11} Eric Owens, a former claims representative for appellee who handled the insurance claim for the tree farm incident, testified during deposition that, if he would have known about the Haimbaughs' lawsuit against Seymour, he would have requested a copy of the complaint. However, James Ervin stated in an affidavit that he and his former law firm represented Seymour in that action. Ervin also stated that he spoke with Eric Owens and told Owens he was representing Seymour in a lawsuit filed by the Haimbaughs for damage to their tree farm. In particular, he stated that he "explored with Mr. Owens whether [appellee] would provide coverage for the claim despite its original denial." Because he had no record of sending a copy of the complaint to Owens, Ervin concluded that he "was never asked to provide the complaint."
 {¶ 12} Ultimately, the trial court granted appellee's summary judgment motion, and the trial court denied appellants' summary judgment motion. The trial court concluded, in agreement with appellee's arguments, that Seymour's insurance policy *Page 6 
did not cover Seymour's February 2002 tree cutting incident because the incident did not constitute an "occurrence," i.e., "accident," under the policy. The trial court defined "accident" as:
 1 a: an unforeseen and unplanned event or circumstance b: lack of intention or necessity 2 a: an unfortunate event resulting esp. from carelessness or ignorance b: an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but for which legal relief may be sought.
 {¶ 13} The trial court found that it was undisputed that Seymour and his crew "intentionally acted and achieved their intended results, i.e. they intended to and did cut down almost 760 trees. This result was not unplanned or unforeseen. Being intentional, neither the act nor the result was an accident."
 {¶ 14} The trial court recognized Seymour's claim that he cut the trees to improve the tree farm. The trial court explained, "[r]egardless of his subjective intent as to a possible benefit to the farm, the loss of over 700 mature trees (i.e. products, to the business) clearly would damage the farm as these destroyed trees could not be sold. * * * Clearly, cutting over 700 trees in the 15-20 foot range from a tree farm is substantially certain to cause damage, regardless of Mr. Seymour's subjective intent."
 {¶ 15} Appellants appeal, raising one assignment of error:
 The trial court erred as a matter of law in granting summary judgment in favor of Defendant-Appellee Grange Mutual Casualty Company and in denying summary judgment for Plaintiffs-Appellants David Haimbaugh, Sally Haimbaugh and Haimbaugh Farms, Inc.
 {¶ 16} In their single assignment of error, appellants argue that the trial court erred in granting appellee's summary judgment motion and in denying appellants' summary judgment motion. We disagree. *Page 7 
 {¶ 17} We review a summary judgment de novo. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. Coventry Twp.v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 18} Pursuant to Civ. R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only under the following circumstances: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
 {¶ 19} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt, 75 Ohio St.3d 280, 292, *Page 8 1996-Ohio-107. Once the moving party meets its initial burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v.Reynoldsburg, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, quotingNorris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1, 2.
 {¶ 20} Here, appellants first assert the application of collateral estoppel against appellee. Collateral estoppel prevents the relitigation in a subsequent case the facts and issues that were fully litigated in a previous case. State ex rel. Stacy v. Batavia Local School Dist. Bd. ofEdn., 97 Ohio St.3d 269, 2002-Ohio-6322, ¶ 16. "[A] fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." Fort Frye Teacher Assn., OEA/NEA v. State Emp.Relations Bd., 81 Ohio St.3d 392, 395, 1998-Ohio-435. Collateral estoppel "does not apply merely to those who were parties to the proceeding. It applies likewise to those in privity with the litigants and to those who could have entered the proceeding but did not avail themselves of the opportunity." Howell v. Richardson (1989),45 Ohio St.3d 365, 367.
 {¶ 21} Appellee is in privity with Seymour, a party in the first litigation. See Corydon Palmer Dental Soc. v. Johnson, Johnson Assocs., Inc. (Feb. 16, 1988), Mahoning App. No. 87 C.A. 121 (stating that an insurer is in privity with the insured). Likewise, in accordance with Howell, appellee had the opportunity to intervene in that *Page 9 
lawsuit, given that appellee had notice through conversations with Seymour's attorney and through receipt of a subpoena pertaining to the lawsuit. We turn, then, to the application of collateral estoppel under these circumstances.
 {¶ 22} Appellants base their collateral estoppel argument on the assertion that, in the first lawsuit, the magistrate concluded that Seymour recklessly cut trees on the Haimbaughs' farm. In support, appellants rely on Western Reserve Cas. v. Glagola, Stark App. No. 2005CA00225, 2006-Ohio-6013. In Glagola, a decedent's estate filed a claim with the homeowner's insurance of Glagola, the decedent's killer, because Glagola fatally shot the decedent in Glagola's home. Id. at ¶ 7. Glagola was convicted of reckless homicide for the shooting, and Glagola's insurance company filed a declaratory action asserting that Glagola's actions were intentional and not covered under the insurance policy, which precluded coverage for expected or intended injuries. Id. at ¶ 7-8, 11-13. The trial court found that Glagola's conviction for reckless homicide barred recovery under the policy. Id. at ¶ 9. The appellate court disagreed and held the following: (1) recklessness does not equate with intentional conduct; and (2) a conviction for an offense containing the element of recklessness does not, as a matter of law, fall under language in an insurance policy that precludes coverage for intentional injuries. Id. at ¶ 40, 44.
 {¶ 23} Here, relying on Glagola, appellants contend that, because the magistrate in the first lawsuit deemed Seymour's actions reckless, the trial court should have applied collateral estoppel to preclude appellee from subsequently litigating whether Seymour's insurance policy covered Seymour's actions, which appellee characterizes as intentional. *Page 10 
 {¶ 24} To support their collateral estoppel argument, appellants note that, in the first lawsuit, the trial court upheld the Haimbaughs' claim under R.C. 901.51, which states:
 No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.
 {¶ 25} We emphasize, however, that Seymour's liability under R.C. 901.51 does not itself conclusively deem Seymour's conduct reckless, and consideration of the underlying facts of the R.C. 901.51 claim is relevant. In Nationwide Mut. Ins. Co. v. Irish, 167 Ohio App.3d 762,2006-Ohio-3227, the Eleventh District Court of Appeals concluded that an insured's guilty plea and conviction for aggravated assault under R.C. 2903.08(A)(2)(b), which contains a mental state of recklessness, did not conclusively establish whether the policy covered the insured's conduct.Irish at ¶ 28, 37-42. Rather, the appellate court noted that the consideration of the underlying facts of the conviction was relevant to whether the policy covered the conduct. Id.
 {¶ 26} Consideration of the underlying facts of the R.C. 901.51
liability is relevant because recklessness is not the only mental state that may apply to the statute. R.C. 2901.22(E) states that, when a section defining an offense provides that "recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element." See, also, Vanderbeck v. CSXR.R. (Feb. 7, 1992), Huron App. No. H-90-45 (affirming R.C. 901.51
liability where party knowingly removed trees). Here, in the first action, the trial court did not specify whether Seymour acted recklessly or, for example, knowingly. *Page 11 
 {¶ 27} To be sure, the July 2004 magistrate's decision in the first action stated: "Whether [Seymour's] actions were malicious may never be known, but they were fraudulent, reckless, and wanton and warrant imposition of punitive damages in addition to compensatory damages." However, as appellants acknowledge in their reply brief, the magistrate did not link these descriptions of Seymour's behavior to particular conduct at issue in that first lawsuit. Rather, the magistrate essentially made the statement as a general depiction supporting an award of punitive damages. In this regard, the magistrate's determinations did not deem Seymour's conduct in the tree cutting incident reckless, as opposed to intentional. The magistrate in the first action did not conclusively determine the issue of Seymour's mental intent in the tree cutting incident. Instead, the magistrate simply held Seymour liable under R.C. 901.51.
 {¶ 28} Thus, we conclude that the trial court in the Haimbaughs' action against Seymour did not determine whether Seymour intentionally harmed appellants in the tree cutting incident. Accordingly, we conclude that collateral estoppel did not preclude appellee from subsequently litigating in appellants' declaratory action whether Seymour's insurance policy with appellee covered Seymour's actions in the tree cutting incident. Thus, the trial court did not err by not applying collateral estoppel against appellee.
 {¶ 29} Next, appellants argue that the court erred by concluding that Seymour's actions did not constitute an "accident" under the policy. The policy states that appellee "will pay those sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage' to which this insurance applies." The policy specifies that coverage will apply only if the injury or damage "is caused by an *Page 12 
`occurrence' that takes place in the `coverage territory'" and occurs during the policy period.
 {¶ 30} The policy defines an "occurrence" as "an accident," but does not define "accident." When a policy does not define a term, we must give the term its ordinary meaning. Morner v. Giuliano,167 Ohio App.3d 785, 2006-Ohio-2943, ¶ 25. "The ordinary meaning of the term `accident' in an insurance policy refers to `unintended' or `unexpected' happenings." Id. As an example, the Supreme Court of Ohio has stated that "inherent in a policy's definition of `occurrence' is the concept of an incident of an accidental, as opposed to an intentional, nature." (Emphasis omitted.) Gearing v. Nationwide Ins. Co., 76 Ohio St.3d 34,38, 1996-Ohio-113. The Supreme Court also has stated that the word "occurrence" when defined as "accident" is "intended to mean just that — an unexpected, unforeseeable event." Randolf v. Grange Mut. Cas.Co. (1979), 57 Ohio St.2d 25, 29.
 {¶ 31} The trial court found that Seymour's actions did not constitute an accident, and therefore an occurrence, under the policy for two reasons. First, the court concluded that Seymour's actions were intentional, that is, he intended to cut down the trees. Second, the court also concluded that, even if there were no direct intent to harm appellants' farm, the harm was substantially certain to occur and, therefore, not accidental.
 {¶ 32} The Supreme Court of Ohio has recognized these two levels of intent as they might relate to intentional acts in these circumstances. "The first level, * * * `direct intent,' is where the actor does something which brings about the exact result desired. In the second, the actor does something which he believes is substantially certain to *Page 13 
cause a particular result, even if the actor does not desire that result." Harasyn v. Normandy Metals, Inc. (1990), 49 Ohio St.3d 173,175. In certain circumstances, the court has found that a court may infer intent to injure and deprive coverage where a substantial certainty of harm existed. See, e.g., Gearing, supra.
 {¶ 33} In Buckeye Union Ins. Co. v. New England Ins. Co.,87 Ohio St.3d 280, 283, 1999-Ohio-67, however, the court referred to those circumstances under which it had inferred intent to injure as "very limited instances." Thus, according to Buckeye Union, the "normal standard" for determining insurability is to make a factual determination as to whether the actor intended the actual harm that resulted. Id. at 284. In other words, "an intent to injure, not merely an intentional act, is a necessary element to uninsurability. Whether the insured had the necessary intent to cause injury is a question of fact." Id. at 283, citing Physicians Ins. Co. v. Swanson (1991),58 Ohio St.3d 189, 193. In a concurring opinion, Justice Cook recognized the court's holding as a departure from Gearing and the substantial certainty method for precluding insurability. See id., at 288 (Cook, J., concurring).
 {¶ 34} In Doe v. Shaffer, 90 Ohio St.3d 388, fn. 5, 2000-Ohio-186, the court acknowledged "that there is debate within this court concerning the current state of the law on whether `substantial-certainty' torts fall within the public policy exclusion for insurance coverage." And, inPenn Traffic Co. v. AIU Ins. Co., 99 Ohio St.3d 227, 2003-Ohio-3373, the court returned briefly to a substantial certainty standard, at least in the context of employer-intentional torts, thus adding even more uncertainty about whether current law allows substantial-certainty torts to preclude insurability. Recent appellate opinions reflect this uncertainty. See, e.g., Talbert v. Continental Cas. Co., *Page 14 157 Ohio App.3d 469, 2004-Ohio-2608 (distinguishing Supreme Court precedent because exclusion of substantial-certainty tort from coverage would render policy at issue illusory); State Farm Mut. Auto. Ins. Co. v.Hayhurst (May 31, 2000), Pickaway App. No. 99 CA 25, fn. 1 (declining to follow the court's plurality opinion in Buckeye Union); Altvater v. OhioCas. Ins. Co., Franklin App. No. 02AP-422, 2003-Ohio-4758 (applyingPenn Traffic and substantial-certainty analysis in the context of an employer intentional tort claim).
 {¶ 35} We conclude that, in this case, we need not consider whether Seymour's actions were substantially certain to produce harm or whether such an analysis is consistent with Supreme Court precedent. Instead, we limit our analysis to the specific language of the policy before us and find that Seymour's intentional acts deprive him of coverage.
 {¶ 36} As we noted, the policy provides coverage for "bodily injury" and "property damage" under certain circumstances. The policy defines "property damage" in two ways. Property damage means "[p]hysical injury to tangible property, including all resulting loss of use of that property * * *; or [l]oss of use of tangible property that is not physically injured."
 {¶ 37} Appellants assert that Seymour did not intend to cause any harm to them. In support, they cite his expectation of payment for his services and his statements that he thought thinning the trees would benefit the farm. It is undisputed, however, that Seymour intended to cut down the trees and to deprive appellants of the use of the trees for sale. Thus, he intended to cause "property damage" as that term is defined under the policy. *Page 15 
 {¶ 38} Seymour's intent to cause property damage, as defined in the policy, distinguishes this case from those cases in which the court inferred intent and allowed preclusion of coverage where the actor did not intend the injury, but the injury from the actor's intentional act was substantially certain to occur. In Gearing, for example, the actor intended to molest children, but testified that he did not intend to harm them physically. In Wight v. Michalko, Portage App. No. 2004-P-0038, 2005-Ohio-2076, the actor intended to throw a rock through a window, but not to hit anyone inside. And in Westfield Ins. Co. v.Blamer (Sept. 2, 1999), Franklin App. No. 98AP-1576, the actor intended to set fire to a couch, but not to the house.
 {¶ 39} In all of those cases, the courts had to engage, as the lower court here engaged, in an analysis of substantial certainty. Given the undisputed facts before us, however, we conclude that substantial certainty analysis is unnecessary. Instead, as we noted, the undisputed evidence shows that Seymour acted with a direct intent to cut down the trees and to deprive appellants of the use of those trees, thus intending physical damage as it is defined in the policy.
 {¶ 40} For these reasons, based on the specific language of the policy before us and on the undisputed evidence, we conclude that the policy does not provide coverage. Seymour not only acted with the direct intent to cut down the trees, he achieved the very result he intended — depriving appellants of the use of those trees for sale. His actions do not constitute an "accident" or an "occurrence" under the policy, and the court did not err in so concluding. Given this conclusion, we need not discuss appellants' alternative argument regarding the inapplicability of the policy exclusion for property damage arising out of operations on real property. App. R. 12(A)(1)(c). *Page 16 
 {¶ 41} Accordingly, we conclude that the trial court did not err by granting appellee's summary judgment motion or by denying appellants' summary judgment motion. Having overruled appellants' single assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 McGRATH, P.J., concurs. BROWN, J., concurs in part and dissents in part.